ORRIN NORTH v. JAMES O. BLOSS, impleaded with JAMES W. ADAMS.

The term "dormant partner" implies one who is not an active partner nor generally known as a partner. But to be such it is not essential a person should wholly abstain from any actual participation in the business of the firm, or be *universally* unknown as bearing a connection with it.

Nor does the term necessarily imply a studied *concealment* of the fact.

Where a firm consisting of three members, B. A. & M. did business under the firm name of "B. & A." and every thing in the apparent mode of transacting their business indicated that B. & A. constituted the sole members of the firm; and there was nothing to signify to ordinary dealers with the firm that M. had any thing to do with it; and there was an entire omission on the part of B. & A. to communicate the fact of such connection to one dealing with them; and actual ignorance by him of such connection, and apparent good faith on his part in treating B. & A. as the only parties interested; *Held* that the referee was right in regarding M. as a dormant partner, and therefore not necessary to be joined as a co-defendant with B. & A.

And the only ground for presuming that there was any *general* knowledge of the fact that M. was interested in the firm being the circumstance of his name appearing upon the cards of the firm, but there was no evidence that these cards were in any way circulated, or issued to a single person; *Held* that it belonged to B. & A. to bring out a fact so vital to their defence, of the non-joinder of M.

Where, in an action to recover back money paid by mistake, the referee found that the defendnts were overpaid—were overpaid by *mistake*, and by mistake on a *matter of fact; Held* that this made the allowance for such over payment a lawful credit in favor of the plaintiff, and deprived the defendants of the benefit of the objection that the payment was a voluntary one made with full knowledge of the fact; it being neither a voluntary payment, nor made with such a knowledge of the facts as barred the plaintiff's title to relief.

*Appeal by the defendant Bloss from a judgment of the Supreme Court, affirming a judgment entered on the report of a referee.*

THE action was brought to recover for moneys advanced by the plaintiff to the defendants, and also for freight and commissions on garden and other seeds sold by the plaintiff for the defendants. The defenses set up in the answer were: 1st. A general denial. 2d. The non-joinder as

defendant of Moses M. Matthews, an alleged general partner with the defendants. 3d. An accounting and settlement between the plaintiff and defendants, and a payment of the balance found to be due.

In the year 1855, the plaintiff was doing business as a merchant at Brockport, in the county of Monroe, and the appellants were doing business as co-partners, at the city of Rochester, as seedsmen, under the name, firm and style of "Bloss & Adams." Moses M. Adams was also a partner with the defendants, and it was a question in the case whether he was a dormant partner or not.

The plaintiff purchased clover and timothy seeds of said Bloss & Adams, amounting to $1,121.41. or thereabouts, at different times during that year, and from time to time gave Bloss & Adams his promissory notes for such seeds, which were accepted and received by them, and upon which they realized the money, and the same were paid by the respondent. Said notes were given at various times whilst the dealings between the parties were going on, and without any settlement or looking over the state of the accounts between the parties. The notes amounted in the aggregate to $1,189.40, making the sum of $67.99 actually overpaid by the plaintiff to said Bloss & Adams, and claimed by the plaintiff to have been so paid by mistake. The plaintiff claimed that they were indebted to him in the sum of $164.08 for money advanced by him to said defendants over and above all discounts and set-offs, which the defendants refused to pay. He also claimed they were indebted to and owing him in the further sum of $164.08, being for money advanced by him at the request of the defendants.

The referee reported in favor of the plaintiff, and against the defendants for the sum of $67.99, and judgment was entered thereon for said amount with costs. The plaintiff's claim for money overpaid by mistake was sustained, and the claim for freight and commissions was disallowed by the referee, who also reported that the action was well

brought against the present defendants without joining Mathews.

Upon the trial, it turned out that Mathews was also a partner in the firm of "Bloss & Adams," but the fact was unknown to the plaintiff, and never communicated to him in all his dealings with the firm. Mathews took no active part in the business; was seldom at the place of business of the firm, and only assisted the firm whenever they wanted to borrow money; he would go to the bank or person of whom the firm wished to borrow money, and make known the fact of his connection with the firm, and being a man of wealth, by the use of his name enabled the firm to borrow money. There is no proof to show that the fact of his being a partner was generally known in the community where the firm was doing business, or that "Bloss & Adams" ever stated to any person that Mathews was a general partner with them. There was nothing in the firm name to indicate that anybody else was. a member of the firm but "Bloss & Adams." Mathews's name was printed in full on the business cards of the firm as a member of the copartnership, but how far, if at all, they were used or circulated does not appear in the case. Upon the trial, the defendants' counsel moved to dismiss the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The motion was denied by the referee, and an exception was taken. On the examination of the witness Sadler, the plaintiff's counsel asked him this question, viz: Have you any knowledge how the plaintiff was selling those seeds? It was objected to by the defendants' counsel, and the objection was overruled by the referee, to which an exception was taken. The plaintiff's counsel also offered in evidence the exhibits marked A, B, C, D, F, G, H, I and K, designed to show the course of business between the plaintiff and defendants; also the notes given by the plaintiff; also the statement of the accounts between the parties, which were also objected to by defendants' counsel, the objection was

overruled by the referee, and his decision was excepted to
by the defendants. The plaintiff also offered parol proof
of the existence of a promissory note which he had paid,
and was unable to find, amounting to $150, which was
also objected to, and overruled by the referee, and his
decision excepted to. The defendants' counsel moved for
a non-suit, which motion was denied by the referee, and
his decision was excepted to.

The referee upon this found the following facts and con-
clusions of law, viz: That in the year 1855, the firm of
Bloss and Adams sold and delivered a quantity of clover
and timothy seed, at Rochester, in the county of Monroe,
to the plaintiff in this action; that said clover and timothy
seed in the aggregate amounted to the sum of $1,121.41,
besides a quantity of garden seeds the value of which does
not appear; that said seeds were received by the plaintiff,
and sold by him upon his own account, and not upon any
commission to be paid by the defendants, and that the
plaintiff paid freight on the same from Rochester to Brock-
port, but no sum was specifically shown; that James O.
Bloss and James W. Adams, and Moses M. Mathews, car-
ried on business as general partners at Rochester, under the
firm name of Bloss & Adams; the name of Mathews, who
was a practising physician, was not in the firm name, and
there were no general terms in it which would suggest to
the public there were other names or partners than those
expressly named in it; Mathews was not generally known
as a member of the firm, and the plaintiff did not know
him as such; he took no active part in the business, and
was seldom at the place of business, but was so occasion-
ally to advise and see how the firm got along; that he
assisted the firm to raise money and negotiated money for
the firm, and was a man of wealth; that his name was pub-
lished in full on the business cards of the partnership, and
his connection with the firm was never concealed nor made
a secret of. The plaintiff paid at different times in the
year 1855 money and gave his promissory notes, which

were received by said firm of Bloss & Adams in payment for said seeds, and on which said firm realized the money, and which notes were at maturity paid by the plaintiff; that said notes and money amounted in the aggregate to $1,189.40, of which the sum of $67.99 was overpaid by mistake. The referee found, as matter of law, that the plaintiff was not entitled to recover anything for freight paid by him, nor for commissions for selling said seeds. That Mathews was a dormant partner of the firm of Bloss & Adams, and that this action could be maintained against Bloss and Adams without joining Mathews as a party defendant; that the defendant was indebted to the plaintiff in the said sum of $67.99; that the plaintiff was entitled to judgment for $67.99, being the amount overpaid by him to said firm of Bloss & Adams more than what the plaintiff was indebted for the seeds sold him by said firm. The defendants excepted to the findings of fact and of law so far as they were adverse to the defendants.

The plaintiff entered judgment upon said report, from which an appeal was brought to the general term of the seventh judicial district, where the judgment was in all things affirmed. This appeal is from the said judgment of affirmance.

The case was submitted on printed points by

*Horace J. Thomas*, for the plaintiff (respondent).

*J. Van Voorhis, jr.*, for the defendant (appellant).

HOGEBOOM, J. In the printed points submitted by the counsel for the appellant *only two* grounds are urged for the reversal of this judgment. It is unnecessary therefore to discuss any other.

The first is, that the plaintiff should have joined Moses M. Matthews as a party defendant. Matthews was no doubt a general partner, and participated in the profits and losses of the concern. But there is no evidence that he

was generally known as such partner; or that the public, in the proper sense of that term, was ever apprised of his connection with the firm. No doubt he could have been sued and held liable on account of his actual membership in the firm, but the question is, was the plaintiff bound to join him as a defendant with the ostensible members of the firm. His name did not appear in the firm name; he did not participate except in an advisory manner in the general and ordinary business of the firm; his connection with it would not be naturally inferred from their mode of business, nor be likely to be known except to those who loaned money or extended pecuniary credit to the firm. It cannot be said that there was any *general* knowledge of the facts. The only ground for presuming such general knowledge would be the fact of Matthews' name appearing upon the cards of the firm. The difficulty is, there is no evidence that these cards were in any way circulated, or issued to a single person. And it belonged to the defendants, I think, to bring out a fact so vital to the defence. There being, therefore, every thing in the apparent mode of transacting their business to indicate that Bloss & Adams constituted the sole members of the firm—nothing whatever to signify to ordinary dealers with the firm that Matthews had any connection with it—an entire omission on the part of the defendants ever to communicate the fact of such connection to the plaintiff—actual ignorance on the part of the latter of such connection—and apparent good faith on his part in treating the defendants as the only parties interested, I am inclined to think the referee was right in regarding Matthews as a dormant partner. He finds that he was so— treating such finding it is true as a question of law—but it being in truth rather a question of fact or of mixed law and fact—a conclusion not unwarranted by the evidence in the case nor by the facts which the referee has detailed in his report. It is conceded that a dormant partner need not be joined as a co-defendant in the action. The definition of a *dormant* partner is not very clearly given in the adju-

dicated cases, or the elementary treatises on partnership. It implies, perhaps clearly enough, one who is not an active partner nor generally known as a partner. But to be such I apprehend it is not essential that he should wholly abstain from any actual participation in the business of the firm, or be *universally* unknown as having a connection with it. Nor does it necessarily imply, as I conceive, a studied *concealment* of the fact. I will not undertake to analyze the various definitions of such a partner, but content myself with a reference to some of the elementary treatises, and a few adjudicated cases. (See Story on Partnership, sec. 80; Collyer on Partnership, sec. 4; Bissett on Partnership, page 5; *Kelley* v. *Hurlburt*, 5 Cowen 534; *Clarkson* v. *Carter*, 3 Cowen 84; *N. Y. Dry Dock Co.* v. *Treadwell*, 19 Wend. 525.)

Even if the evidence on this point be regarded as nearly balanced, or slightly preponderating in favor of the defendants, I think we may well support the finding of the referee on rules of interpretation and review applicable to questions of fact.

It is held, in the superior court of New York, that where one person enters into a contract with two others, by name, without knowing or having, at the time, reason to suspect that they have a partner in the business to which such contract relates, such two persons may be sued without joining such third person; and he may be regarded as to such transaction, and under such circumstances, as a dormant partner, although the fact of his connection with the firm come to the knowledge of the plaintiff before the bringing of the suit. (*Hurlbut* v. *Post*, 1 Bosw. 36; See also *N. Y. Dry Dock Co.* v. *Treadwell*, 19 Wend. 525; *Clarkson* v. *Carter*, 3 Cowen, 84; *Clark & Bissell* v. *Miller & Lozee*, 4 Wend. 628; *Mitchell* v. *Dall*, 2 Harr. & Gill. 159, 171.)

The remaining point discussed by the appellant is that the judgment appealed from can not be sustained on the merits.

I do not think this question is open for discussion. We cannot interfere with the conclusions of the referee on the questions of fact. There is plainly good evidence—I think preponderating evidence—to support his finding, abundant evidence to justify the refusal to non-suit, and to sustain the verdict of a jury.

It is said that the report is unsustainable because the referee has found, as one of the facts in the case, that Bloss & Adams sold the plaintiff clover and timothy seed to the amount stated in his report, besides a *quantity of garden seeds, the amount and value of which does not appear;* and that the price of the latter might well account for the apparent excess of the amount of the plaintiff's payments over his receipts.

But it is not the business of an appellate tribunal, reviewing the case simply on questions of law, to criticise with much nicety the findings of fact in order to speculate on some phases of the case which were not probably presented in the court below, or were susceptible of ample explanation there. It may well be answered that the garden seeds were not urged as an item of the defendant's claim in the court below, or were satisfactorily accounted for there in a way not necessary to be shown in the case, as no point was made thereon. Certain it is that neither the quantity nor the value of the garden seeds is shown, and cannot therefore be taken as justifying an implication against the correctness of the referee's report, nor as justifying an allowance equal to the balance which he found in favor of the plaintiff. Certain it is, also, that he found the defendants were *over-paid*—were over-paid *by mistake*—and by mistake on a *matter of fact*, which makes the allowance for such over-payment a lawful credit in favor of the plaintiff, and deprives the defendants of the benefit of the further ground taken by them, that the payment was a voluntary one, made with full knowledge of the facts. In the light of the referee's report and of the legal definition of a voluntary payment, it was neither voluntary nor made

with such a knowledge of the facts as barred the plaintiff's title to relief.

The judgment should be affirmed.

DENIO, Ch. J., and INGRAHAM, J., were for reversal, on the grounds that the burden of proof was on the plaintiff, and that the value of the garden seeds must be shown before there could be said to be an over-payment.

All the other judges being for affirmance, judgment affirmed.