EDWARD ARNOLD *et al.* Respondents, *against* JOHN J. MOR-
RIS *et al.* Appellants.

(Decided February 4th, 1878.)

Where the plaintiffs had been induced to execute a bond of indemnity to secure
from loss the sureties in a bond given to release an attachment on a stock of
goods belonging to a business firm, upon the promise that the goods so released
should be held for the plaintiff's indemnity and security against loss,—*Held*, that
the plaintiffs had an equitable lien on such stock of goods for the amount they
had been legally compelled to pay by reason of the bond of indemnity, and

*Held*, further, that such lien could be enforced as against the general assignee of
the firm for the benefit of their creditors.

*Held*, further, that although an agreement that the firm might make sales from
such stock of goods and purchase others to replace those sold, and that those so
purchased might in their turn be sold and their place supplied by others, the
plaintiffs' lien to open and shut, to let out and take in such goods, would make
the agreement void as against creditors, or the assignee as their representative,
yet that such an agreement was not established by evidence that the firm had
promised to keep the stock of goods "replenished" up to its then value, and that
the agreement must be construed according to the positive promise of the firm
to "hold the goods" for the plaintiffs' indemnity or security, without consider-
ing the additional promise as to replenishing the stock,

*Held*, further, that under the agreement as thus construed, if the firm, without the
plaintiffs' consent or knowledge, disposed of parts of the stock and put in other
stock to supply its place, that the latter mingled with the former and became
subject to the plaintiffs' lien.

*Held*, further, that the active members of the firm had authority, without the
knowledge of a dormant partner, to create such a lien on the firm property
when it was done for the benefit of the firm and to relieve the firm property
from attachment.

*Held*, further, that in an action to establish the plaintiffs' lien on such goods the dor-
mant partner was not a necessary party.

APPEAL by the defendants from a judgment of this
court, entered on a decision rendered by Judge LARREMORE
at special term, in favor of plaintiffs against defendants,
Morris and Wilmerding, as assignees of Rouss, Bell & Co.,
for $6,304 35.

Arnold v. Morris.

The suit was brought to establish an equitable lien upon the proceeds of certain property sold by the defendants as assignees of Charles B. Rouss and William J. Bell, composing the firm of Rouss, Bell & Co., of New York.

The facts of the case were as follows: Defendants, Charles B. Rouss and William J. Bell, together with Mary Jane Taylor (a secret partner, not joined as a party in this action), composed the firm of Rouss, Bell & Co., and owned a stock of goods in a store in Hoboken, New Jersey. On January 28, 1875, the goods were attached by the sheriff of Hudson County, New Jersey, by virtue of an attachment issued out of the Circuit Court of that county, at the suit of N. B. Falconer and J. B. Sleigh against Charles B. Rouss, William J. Bell and John E. Weir. In order to relieve the property of Rouss, Bell & Co. from that attachment, the latter firm, by Rouss and Bell, procured Richard Muser and Frederick W. Muser to agree to become sureties in an undertaking for such purpose, if they were safely and properly indemnified therefor. Rouss and Bell thereupon, on February 3, 1875, procured these plaintiffs to execute to the Musers a bond of indemnity against all loss, damages, costs and expenses that might arise from the execution of such undertaking. The consideration for executing this bond of indemnity was the promise to plaintiffs by Rouss and Bell, acting for Rouss, Bell & Co., to hold the stock of goods so attached as an indemnity to plaintiff, and to keep the stock fully replenished up to its then value, which value had been appraised by the sheriff at $6,312 50. The Musers thereupon executed an undertaking in the action against Rouss, Bell and Weir, in the sum of $12,625, being double the value of the property aforesaid, the condition of which undertaking was that if the defendants in the action should perform the judgment of the court, or if the property attached or its value should be forthcoming and subject to the order of the court for the satisfaction of the judgments, the obligation should be void, but otherwise remain in full force. Upon the execution and approval of such undertaking, the sheriff delivered the attached property to Rouss, Bell & Co., whose

business in the Hoboken store, carried on by them, had been for some days suspended by the seizure of the stock by the sheriff.

At the times of these occurrences Rouss, Bell & Co. were solvent. On May 12th, 1875, by Rouss and Bell, acting for the firm, they assigned all their property for the benefit of their creditors to the defendants John J. Morris and John C. Wilmerding, who accepted the trust, qualified, entered on their duties, took possession of all the property of Rouss, Bell & Co., including the stock in the Hoboken store (which then consisted of a large portion of the stock originally attached and new stock added to replenish it), and sold such stock at a valuation of fifty cents on the dollar, and realized therefrom $5,100 51, which sum said assignees had in their possession when this suit was begun.

In the action on which the attachment had been issued judgments were recovered, about February 1, 1876, against Rouss, Bell & Weir, the defendants therein, to an amount exceeding $6,312 50 in favor of the plaintiffs therein, Falconer & Sleigh, and of several other creditors of Rouss, Bell & Weir, who, under the laws of New Jersey, applied to be and were admitted to the rights of the plaintiffs in that action in respect of the attachment and undertaking aforesaid (Laws of N. J. of 1846, 1854, 1859, 1871, 1874). About March 1, 1876, Falconer & Sleigh commenced an action upon the undertaking against the Musers and Rouss, Bell and one Hugh A. McKee (who were joint makers with the Musers of the undertaking), of which action notice was given to the assignees of Rouss, Bell & Co. On April 1st the Musers paid to the judgment creditors $6,312 50 under their liability upon their undertaking, and on the same day these plaintiffs paid to the Musers the sum of $6,312 50 under their liability upon their bond of indemnity.

Judge LARREMORE on deciding the case at special term rendered the following opinion:

[After stating the facts of the case.] "The questions involved in the determination of this action may be considered in the following order:

"1. What rights have the plaintiffs succeeded to as assignees of the attaching creditors?

"2. Did the alleged verbal agreement to hold the property for plaintiffs' benefit, made contemporaneously with their obligation to indemnify, raise a trust which a Court of Equity will enforce?

"3. Have plaintiffs acquired an equitable lien upon the proceeds of the property in the hands of the defendants?

"In answer to the first inquiry we are met by the act 'for the relief of creditors against absconding and absent debtors,' and supplements thereto (Nixon's Digest, 4th ed., 48). It is therein provided that property attached may be delivered to the party found in possession, upon the giving of a bond, with a condition that the defendant in the attachment suit shall perform the judgment of the court, or that the property or its value shall be forthcoming and subject to the order of the court for the satisfaction of such judgment.

"The bond executed by R. & F. W. Muser, and upon which the property in question was delivered over, was in the form last mentioned. After examination of the statute, I have little hesitation in holding that such bond enured to the benefit of the applying as well as the attaching creditors.

"The doubtful question at the trial was that which relates to the effect of the bond upon the lien of the attachment;—was such lien continued or revived by the recovery of the judgment of February 1st, 1876, or were the creditors to the attachment restricted to their right of action on the bond? No adjudication upon this precise point by the courts of New Jersey was cited, but the reasoning in *Vreeland* v. *Van Buren* (1 Zabriskie, 214) seems apposite and satisfactory.

"In that case the late Chief Justice Hornblower contended that as between the plaintiff in the attachment and the defendant the goods were not discharged by the giving of the bond; that they were to a certain extent in the custody of the law; that this appeared by the condition of the bond therein given—not that 'the defendant,' if judgment is

given, ' will pay the debt, but that he will return the goods.' But the court held that the lien as to personal property was dissolved on the execution of the bond required by statute, and that the plaintiffs and creditors must then look to the bond only, unless a new lien was created on the property by placing an execution in the sheriff's hands before the defendant had aliened it. The property attached having been assigned and sold, and the proceeds taken to another State, the lien of the New Jersey creditors, if not before, was then discharged. The plaintiffs, as assignees of the judgments recovered upon the attachment, have no claim upon the property or its proceeds that can be enforced beyond the jurisdiction of the courts of New Jersey.

" 2. Let us now consider the effect of the parol agreement of February 3, 1875. There was a conflict in the testimony as to its existence, but the weight of evidence is clearly in plaintiffs' favor. Arnold swears positively to the fact that the goods were to be held as an indemnity for the plaintiffs, and all their acts and subsequent transactions were consistent and in harmony with this statement. They wrote the letter that induced Muser Bros. to give the bond for the discharge of the attachment.

" Notwithstanding the testimony of Richard Muser that Opdyke, Steele & Co. first requested him to give the security required, and for which they promised him indemnity, yet he testified that he was to have indemnity also from the plaintiffs.

" The promise of Opdyke, Steele & Co. was not kept, and but for the bond given by plaintiffs on March 10, 1875, in pursuance of the agreement of February 3, 1875, the Muser Bros. would have paid the sum of $6,312 50 for the privilege of becoming sureties in a matter in which they had no interest.

" The only testimony in opposition to such agreement was that of the defendant Rouss, who denied having made it. He also denied that he had dictated the letter until confronted by his own draft of it, and, even then, had no recollection of any thing about it but his own handwriting. Tak-

ing into consideration his financial stress in February, 1875, property attached and speedy relief sought, application to plaintiffs and their prompt and effective action, the presumption in plaintiffs' favor as to the existence of the contract is strengthened into conviction. The plaintiffs having thus, as shown, incurred an obligation to Muser Bros. upon Rouss' original promise to them of indemnity by lien on the specific property, are thus entitled *inter sese* to enforce such lien (*Barry* v. *Ransom*, 12 N. Y. 462) and to follow the proceeds of such property wherever the same can be found and identified (*Haggerty* v. *Palmer*, 6 Johns. Chan. 437).

" When Rouss, Bell & Co. made a general assignment for the benefit of creditors, the property in question passed to defendants, subject to plaintiffs' lien and all existing equities (2 Edw. Chan. 483 ; *Haggerty* v. *Palmer*, *supra*).

" 3. The right to follow these proceeds rests upon sound equitable principles :

" 1st. A violation of the trust to keep the property for plaintiffs' benefit and indemnity.

" 2d. The tracing of the proceeds, or a large proportion thereof, into the hands of the defendants (Story's Equity Juris. 1258).

" The actual amount upon which plaintiffs' lien has attached should, for greater certainty, be determined on a reference in which all the books of account should be produced for examination and the extent of defendants' liability ascertained.

" The objection raised as to the non-joinder of Mrs. Taylor as a party defendant ought not to defeat the plaintiffs' right to enforce a specific lien on the proceeds of the property over which Rouss & Bell ostensibly had the entire control.

" The liability of the plaintiffs was that of indemnitors for the firm of Rouss, Bell & Co., and the release of the property from attachment was also for the benefit of said firm. The agreement of Rouss & Bell with plaintiffs bound the firm (Story on Partnerships, secs. 102, 103), and so long a time having elapsed and no proof having been

offered of Mrs. Taylor's disapproval of the agreement last mentioned, her ratification of it, under all the circumstances of the case, will be inferred.

As the plaintiffs have established an equitable lien on the proceeds of the property in dispute before the defendants took possession thereof, they are entitled to the benefit of the rule—*Qui prior in tempore, potior est jure.*

" The liability of Muser Bros. on their bond was, I think, fully established, and plaintiffs, as their indemnitors, were justified in repayment without suit.

" Judgment is therefore rendered in favor of the plaintiffs against the defendants, establishing a lien upon the proceeds of the property in question, and for a reference to ascertain the amount thereof."

Upon the coming in and confirmation of the referee's report, judgment for the plaintiffs for $6,304 35 was entered and the defendant appealed.

*Robert Ludlow Fowler,* for appellants.

*Douglass Campbell* and *George C. Lay, Jr.,* for respondents.

JOSEPH F. DALY, J.—[after stating the facts of the case as given above].—Upon these facts the learned judge, at special term, held that the promise of Rouss & Bell to plaintiffs to hold the stock attached in the Hoboken store, and additions to the stock, as security for plaintiffs against loss, by reason of their indemnifying the Musers for giving the undertaking to discharge the attachment, created a trust in favor of the latter, which they were entitled to enforce as a lien against the stock in the Hoboken store, and the goods with which the same was replenished, and by which they were entitled to the proceeds of the sale of such stock and goods in the hands of the assignees of Rouss, Bell & Co., viz.: the sum of $5,110 51; and he gave judgment for that amount, with interest and costs.

The questions raised on the appeal are as to—1st. The agreement by which the trust was raised and the lien created,

and the power of Rouss & Bell to act in that regard for their firm.   2d.  The non-joinder of Mary Jane Taylor, the other partner, as a party to this action.   3d.  The liability of the Musers to pay $6,312 50 upon their undertaking, and the obligation of plaintiffs to repay the Musers that sum upon their bond of indemnity to the Musers.   4th.  The right of plaintiffs to the proceeds of property with which the stock in the Hoboken store was replenished, from time to time, after the creation of the trust.

The promise of Rouss & Bell to plaintiffs, upon the faith of which the latter indemnified the Musers, was a verbal one.   The plaintiff, Arnold, was the only witness called to sustain the issue, although he swore that his partner, Mr. Banning, the other plaintiff, Mr. Bull, their salesman, and Mr. Bell, defendant, were present.   But if Banning was not called to corroborate Arnold as to the promise, Bell was not called to corroborate Rouss in his denial of it.   The testimony of Banning would have been cumulative merely, and his non-production, as a witness, even though a coplaintiff, could not, as matter of law, raise any presumption against plaintiffs' case.   The judge doubtless took it into consideration in determining the fact in issue, as a judge might, and defendant could ask no more ; he did not in fact ask that. (*Bleecker* v. *Johnson*, Ct. Appeals, 4 N. Y. Weekly Digest, 402, reversing this court; 51 How. Pr. R. 380.)

The judge who tried the cause, in his opinion, printed in the case, gives very convincing grounds for believing that the promise was made, and a perusal of the whole evidence leaves the same conviction in my mind.   And the agreement, as sworn to by Arnold, was sufficient to create the lien in plaintiffs' favor.   Rouss said to plaintiffs that he had a stock of goods in Hoboken, which had been attached for a debt contracted by Weir, and he had been unable to find a resident of New Jersey to go on a bond to release the goods —any intimate friend of his—but that he had found a party who would do so if he could get some friend of his to indemnify the party.   He desired the plaintiffs to become security against any loss by these residents of New Jersey.

He said the goods attached were worth between $10,000 and $15,000; they were in first class order; that he was doing a nice business there; and that it interrupted his business very much; and he was anxious to have them released as soon as possible; that if plaintiffs would give the indemnity to the Musers, they might have the stock and goods as their own—if they wished, put one of their clerks or salesmen over there to take charge of it; that he would keep it replenished, and up to its present value at that time; and that they might put up their own sign; that he would hold the goods as indemnity for them or to secure them, or a word of like import. Upon this promise plaintiffs did as requested, became indemnitors of the Musers, who then executed the undertaking to release the goods, and defendants Rouss and Bell became bound accordingly to "keep the stock replenished to its then value," and "hold it as indemnity" or security for plaintiffs, thus creating a valid trust for plaintiffs' benefit, and giving plaintiffs a lien on the goods and a right to follow the property or its proceeds into the hands of a general assignee for their indemnity or security; the intention that the stock of goods should be plaintiffs' security against loss on their bond being manifest and unmistakable (*Haggerty* v. *Palmer*, 6 John. Ch. R. 437; *Burn* v. *Carvalho*, 4 Mylne & Craig, 690–702; *Seymour* v. *The Canandaigua & N. F. R. R. Co.*, 25 Barb. 284; *Barry* v. *Ransom*, 12 N. Y. 462; *Hale* v. *Omaha Nat. Bank*, 49 N. Y. 626).

But had Rouss and Bell, two of the firm of Rouss, Bell & Co., power to pledge the goods of the firm for this purpose? In all matters relating to the firm business they had general authority as partners to act for their firm. The goods seized by the sheriff were the property of the firm, and the object of having the Musers execute the undertaking in the attachment suit was to release the goods of the firm and enable it to carry on its business. This was an act done for the benefit of the firm wholly irrespective of the question as to whether the attachment was rightfully levied on those goods, and whether the action in which the attachment issued was against the firm or against Rouss and Bell indi-

vidually, or against another copartnership formed by them and Weir. The release of the goods of Rouss, Bell & Co. was the business in hand, and to effect it plaintiffs were requested by two of that firm to indemnify the parties who, if so indemnified, were willing to give the necessary undertaking. In making the promise to plaintiffs, Rouss and Bell were acting for the firm of Rouss, Bell & Co., whose goods were wrongfully seized and whose business was suffering injury, and the benefit derived from the plaintiffs indemnifying the Musers was a benefit to Rouss, Bell & Co. The act of Rouss and Bell was not subversive of the objects of the copartnership, but to further its interest, and enable it to carry on its business, and was a direct benefit to the business. The consideration for such benefit was properly offered by that firm, and in creating a lien upon its goods for that purpose, the partners, Bell and Rouss, were not exceeding their authority, nor committing a fraud upon their copartner, nor using the copartnership property to secure their individual debts, although, as appellants contend, the attachment was issued against the copartnership property of John E. Weir & Co. (consisting of Rouss, Bell and Weir), and was wrongfully levied on the property of Rouss, Bell & Co. Mary Jane Taylor, the other member of the firm of Rouss, Bell & Co., being a secret partner, is bound by all the acts of the ostensible partners Rouss and Bell, to whom she committed the charge of the copartnership affairs; her consent in any other form is not necessary to be proved, nor (and this touches the next question raised on this appeal) is she a necessary party to any action affecting the copartnership property. Although the assignees of Rouss, Bell & Co. were trustees of an express trust, and are to turn over the surplus, if any, in their hands, after paying the debts, to the assignors as tenants in common of the surplus, it is merely a question for the assignees as to whether they will render such surplus, if any, to Rouss and Bell, the ostensible managing partners, who would hold it for themselves and as trustees for Mary Jane Taylor under the copartnership, or whether they would pay to the latter her share. But Rouss

and Bell alone—who, as the active partners, managed the whole business for themselves and Mrs. Taylor, created the trust to plaintiffs and the trust to these assignees with Mrs. Taylor's consent—are necessary parties in all questions affecting the assignment of the copartnership property. As a secret or dormant partner she need not be joined as a defendant (*North* v. *Bloss*, 30 N. Y. 374).

The next question to be considered is as to the obligation of plaintiffs under their bond of indemnity to repay the Musers the sum of $6,312 50, which the latter had paid out to the attaching creditors in New Jersey in satisfaction of their liability under their undertaking in the attachment suit. It is contended by defendants here that the Musers were liable for no more than the sum of $1,065 13, the judgment of Falconer & Co., the plaintiff in the attachment suit, and were not bound to pay the judgments of other creditors, who, under the New Jersey statute, were admitted to the benefit of the attachment. There are three provisions of that statute for discharging attachments by giving undertakings. The 33d section provides : " That if the defendant appear to any attachment, he shall enter into bond with one or more sufficient sureties, being resident in this State, in case the attachment shall have been issued out of the Supreme Court, and in case the attachment shall have been issued out of the Circuit Court or Court of Common Pleas, then in the county in which such court shall be held, which bond shall be approved by the court, or a judge thereof, and shall be given to the sheriff of the county in case the attachment shall issue out of any Circuit Court or Court of Common Pleas, and to such sheriff as the court or judge shall direct in case the attachment shall issue out of the Supreme Court ; which bond the sheriff is hereby required to take in his own name, in double the amount of the personal property attached, conditioned for the return of the goods and chattels, rights and credits, moneys and effects seized and taken by virtue of such writ of attachment, in case judgment shall be rendered for the plaintiff ; and said sheriff shall, in case of a breach of such condition, on application of the plaintiff or any ap-

Arnold v. Morris.

plying creditor of the said debtor, assign the said bond, without fee or reward, to such person as the court shall direct, to be prosecuted for the benefit of the plaintiff and such creditors as shall have applied to the court or auditors under such attachment in conformity to this act."

The 37th section provides: "That if the said defendant, instead of giving any of the bonds before mentioned, shall make, execute, and file in the office of the clerk of the court out of which an attachment shall have issued, a bond with two or more sureties, to be approved by said court or a judge thereof, to the plaintiff in attachment, and a like bond to each of the creditors, who shall have applied as aforesaid, in double the sums respectively sworn to by them, conditioned for the payment of such moneys as may be adjudged to be due to them severally; and shall also enter his appearance to the suit of the said plaintiff and each of said creditors; then it shall be lawful for the said court or a judge thereof, either in term time or vacation, if it shall appear just so to do, to order the said attachment to be set aside, and that both the real and personal estate of the defendant be released and discharged from the lien thereof."

The 41st section provides that it shall be the duty of the officer by whom any writ of attachment shall be executed to deliver any property attached by virtue of such writ to the person in whose possession the same is found, upon the execution, in the presence of the officer, of a bond to the plaintiff by such person with one or more sufficient sureties in double the value of the property, conditioned that the defendant shall perform the judgment of the court in the action, or that the property or its value shall be forthcoming, and subject to the order of the court for the satisfaction of such judgment.

The undertaking executed by the Musers was under the last section, which does not, in terms, refer to applying creditors, nor provide for the enforcement of their judgments against the attached property, or the obligors in the undertaking. It was not shown on the trial that such a liability

had ever been enforced against the sureties; but, on the other hand, it had not been denied, and the question is in doubt. Looking at the intention and spirit of the statute taken in connection with the other provisions of law on the subject, it does not seem difficult to reach a conclusion. The 41st section affords the defendant in attachment a more summary mode of relieving his property than those permitted in the 33d and 37th sections. Such an enactment in no wise warrants the supposition that the rights of applying creditors were to be cut off by it, and the property freed from their liens. This would render all the other provisions of the law practically useless, since the easiest form of proceeding by the debtor yielded him such greater benefit. The 41st section is not inconsistent with the provisions of law permitting other creditors to be admitted to the benefit of the attachment, and does not supersede it; it appears to me, in fact, to provide generally for their security. It will be seen that the undertaking executed by the Musers under that section (41) was conditioned that the defendant shall perform the judgment of the court in the action, or that the property or its value shall be forthcoming and subject to the order of the court for the satisfaction of such judgment. Under the provisions of the statute, other creditors of the defendants in that action applied in the action and recovered judgments in their favor. The aggregate of their judgments and that of Falconer & Co., the plaintiffs in the action, amounted to more than $6,312 50. These together formed the "judgment in the action for the satisfaction" of which the Musers undertook that the attached property should be forthcoming. The applying creditors had no remedy except to file their affidavits of claim; issue was joined between each applying creditor and the defendants in attachment as well as between the latter and the plaintiffs in the attachment; those issues were tried together and judgments entered in favor of all the creditors. In case of default, one judgment would be entered up in favor of the plaintiff and all the applying creditors, and for their benefit. Here there

were several judgments, but all in the same attachment pro-
ceeding, and there was really but one action, and, it follows,
but one judgment, though in favor of different parties for
different amounts.   The obligation of the Musers to pro-
duce the attached property for the satisfaction of the judg-
ment in the action would not have been performed by merely
satisfying the judgment of Falconer & Co., the plaintiffs.
The opinion expressed by the witness Gilbert Collins, Esq.,
an attorney and counsellor-at-law in the courts of New
Jersey, and his reasons for his opinion, seem to me to be
satisfactory, although the questions arising upon the facts
are not free from doubt, as stated by Richard Wayne Parker,
Esq., the other counsel examined on the point.

The next question is as to the proceeds of goods put in
the Hoboken store after the creation of the trust in plain-
tiffs' favor, in order to replenish the stock and keep it up to
its value at the time of such trust.

If the agreement between Rouss & Bell and plaintiffs
were that the former might sell the goods then in the store
pledged to plaintiffs, and substitute others for them, which
might in time be sold and their place supplied, the plaintiffs'
lien to open and shut, to let out and take in, and finally to
attach to whatever might remain when the plaintiffs chose
to enforce it, I should have little hesitation in holding the
agreement invalid.   No such fatal intention is to be assumed
from the mere fact that the defendants (not the plaintiffs)
spoke of keeping the stock "replenished" to its then value.
An agreement to secure plaintiffs by a lien on stock which
defendants might dispose of next day, or by a lien on goods
that they might thereafter buy, would be no security, as it
would give no lien.   To give any meaning or force to the
agreement we must construe it according to the positive
promise "to hold the goods" for plaintiffs' indemnity or
security, without considering the vague and unexplained ad-
dition as to replenishing the stock.   If, therefore, Rouss,
Bell & Co., holding the stock in trust for plaintiffs' security,
without the latter's knowledge or consent, disposed of parts

of it, and put in other stock to supply its place, the latter mingled with the former and became subject to the trust.

The judgment should be affirmed, with costs.

CHARLES P. DALY, Ch. J., concurred.

Judgment affirmed with costs.