HUMPHREY E. WOODHOUSE et al., Respondents *v.* JACOB M. DUNCAN et al., Appellants.

Where a charter-party is not under seal it is competent to prove, by evidence *aliunde*, that the charterers named therein, and who executed it, did so not only for themselves but also for others who were jointly interested with them as principals; and an action is maintainable thereon against all the parties so interested.

In an action upon a charter-party it appeared that it was executed by defendants, D. & P., on behalf of themselves and the other defendants who were jointly interested with them as charterers. The answer set up, as a counter-claim, damages alleged to have resulted from a breach of an agreement in the charter-party on the part of plaintiffs. On the trial plaintiffs gave in evidence the judgment record in a suit in admiralty brought by D. & P. against the vessel and its owners to recover damages for the same alleged breach of contract. The record showed the libel was dismissed on the ground that the owners "had kept and performed all the covenants and undertakings in the said charter-party contained on their part." *Held*, that the said judgment was conclusive, not only against D. & P., but upon those whom they represented and who were in privity with them, although they were not made parties.

The answer alleged that three other persons were interested with defendants in the adventure and were necessary parties. It appeared that the three persons named had some interest, but it did not appear that plaintiffs knew of it at the time the charter-party was executed, nor was it proved that the interest was that of partners or joint contractors with defendants. *Held*, that the omission to make the three persons specified defendants was not a sufficient ground for reversal; that if at the time of making the contract the persons named were not known to plaintiffs to be joint contractors, it was not necessary to make them parties;

that it was not sufficient to show that plaintiffs knew said persons had some interest in the adventure; it was requisite to prove knowledge that they were members of a firm or joint contractors, with defendants.

(Argued June 14, 1887; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 8, 1885, which affirmed a judgment in favor of plaintiffs entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*R. D. Benedict* for appellants. The overruling of the defense of non-joinder by the court, was clearly erroneous. If, at the time of the contract, the creditor knows his debtor has a partner, or knows he has a " dormant partner," and the non-joinder is objected to, and such other partner is not joined, " it will be left with the jury to say with what parties the contract was intended to be made." (*Cookingham* v. *Lasher*, 1 Abb. Ct. of App. Dec. 438; Collyer on Part., § 719.) The true test is whether or not the defendants gave the plaintiffs reasonable grounds for believing that the defendants were the only parties interested in the venture. (Collyer on Part., § 720; 2 id. [6th ed.], 1057, § 720, *n.; Bonfield* v. *Smith*, 12 M. & W. 405, 407, 409; *De Mautort* v. *Sanders*, 1 B. & Ad. 401.) As the plaintiffs knew at the time of the contract that there were other parties interested, the defendants were entitled to a dismissal of the complaint. (*Newman* v. *Marvin*, 12 Hun, 236.) As the credit was by agreement given by the plaintiffs to Duncan & Poey alone, plaintiffs are bound by their assent to this arrangement. (*Patterson* v. *Ganda- sequi*, 15 East, 62; *Meeker* v. *Claghorn*, 44 N. Y. 349; Story on Agency, § 447.) If an agent informs a party with whom he has dealings that he is acting for a principal, and at the same time credit is given to the agent with the consent of the latter, the creditor cannot thereafter charge the principal. (*Page* v. *Stone*, 10 Metc. 160; *Bate* v. *Burr*, 4 Harr. 130;

*Coxe* v. *Devine,* 5 id. 375; *Ahrens* v. *Colt,* 9 Humph. 643; *Ranken* v. *De Forest,* 18 Barb. 143; *Ins. Co. of Penn.* v. *Smith,* 3 Whart. 520, 528; *Tuthill* v. *Wilson,* 90 N. Y. 423; 2 Smith's Lead. Cas. pt. 1, p. 427.)

*William Allen Butler* for respondents. The objection made by the defendants at the trial to the introduction of the record on the ground "that it was not a suit between the same parties" was properly overruled. (*Goodrich* v. *City,* 5 Wall. 566; *Taylor* v. *Royal Saxon,* 1 Wall., Jr. 333; *Dunham* v. *Bower,* 77 N. Y. 76, 79.) The whole merits of the defense, based on the alleged breach of the charter-party, having been litigated and adjudged between the parties to this action in the former suit, the evidence offered at the trial to show damages for the breach alleged in the answer was properly excluded. (*The Francis Wright,* 105 U. S. 381, 391.) All are bound by a judgment who had a right to be heard therein, and all who are in privity with them, and all who are bound by a judgment, are entitled to the benefit of it against the parties to it, or their privies. (Greenl. on Ev., §§ 522, 523; *Duchess of Kingston's Case,* 2 Smith L. C. 424; 20 State Trials, 528; *Embury* v. *Conner,* 3 N. Y. 511; *Castle* v. *Noyes,* 14 id. 329; *Tuska* v. *O'Brien,* 68 id. 446; *Church* v. *Kidd,* 88 id. 652; *Craig* v. *Ward,* 3 Keyes, 387; *Dunbar* v. *Bower,* 77 id. 76; *Leavitt* v. *Wolcott,* 95 id. 212.) The court, at the trial, properly rejected the evidence offered by defendants to prove statements and representations made by plaintiffs before the signing of the charter-party, as to the condition of the steamer, or her rate of speed. (*Hendricks* v. *Decker,* 35 Barb. 298; *Richtmeyer* v. *Remsen,* 38 N. Y. 206; *Still* v. *Little,* 63 id. 427; *Oberlander* v. *Spiess,* id. 175; *Duffany* v. *Ferguson,* 66 id. 482, 484.) The fact that the charter-party was signed by the defendants Duncan & Poey alone, did not prevent plaintiffs from proving, by parol, that the other defendants were interested. (*Briggs* v. *Partridge,* 64 N. Y. 357, 362; *Nicoll* v. *Burke,* 78 id. 580; *Hill* v.

*Miller,* 76 id. 32.)    There was no error in the rulings of the
court as to the non-joinder, as defendants, of the three persons
who were interested in the venture, but whose interest was
not disclosed, and was unknown to plaintiffs when the action
was commenced.    They were not necessary parties.    (*Leslie
v. Riley,* 47 N. Y. 648, 652; *North v. Bloss,* 3C id. 374;
*Brown v. Birdsall,* 29 Barb. 549, 550; *Marvin v. Wilber,* 52
N. Y. 270; *Farwell v. Davis,* 66 Barb. 73; *Arnold v. Morris,*
7 Daly, 498, 505; *Snelling v. Howard,* 51 N. Y. 373.)

EARL, J.    This action was brought by the plaintiffs to
recover the sum of $6,966.86, alleged to be due from the
defendants for the use of the steamship Francis Wright,
under a charter-party dated September 13, 1872.    The com-
plaint alleges that the steamship was chartered by the defend-
ants for the purpose of going to Galveston, Texas, and
bringing thence a cargo of fresh beef.    The defendants, in
their answer, besides denying most of the material allegations
of the complaint, alleged that the steamship was chartered
by a written charter-party to the firm of Duncan & Poey;
that the plaintiffs wholly failed to keep and perform the
charter on their part, and failed to keep the vessel tight,
staunch, well-fitted, tackled and provided with every requisite
for such a voyage, as in and by the charter they agreed to
whereby great damage resulted to the charterers to an amount
exceeding the charter money; and for a further defense they
alleged as follows: "That the following persons and no
others were interested in the said adventure, viz.: Stephen
Flanagan, James M. Flanagan, Edward W. Wilson, R. Ross
Roberts, J. Kemp Bartlett, James F. Matthews, Jacob M.
Duncan and Simon Poey; and that the said R. Ross Roberts,
who resides at Harrisburg, Pennsylvania, J. Kemp Bartlett,
who resides at Easton, in the State of Maryland, and James
F. Matthews, who resides in New York city, all three of
whom are still living, are necessary parties defendant in this
action."    The action was brought to trial at a Circuit Court,
and the judge presiding directed a verdict in favor of the

plaintiffs, and the judgment entered thereon was affirmed at the General Term.

It appeared upon the trial that the charter-party was signed only by the plaintiffs under the firm name of Woodhouse & Rudd, and by the defendants, Duncan & Poey, under the firm name of Duncan & Poey. The claim is therefore made that the action cannot be maintained upon the charter-party against all of the defendants. But it appeared at the trial conclusively that Duncan & Poey executed the charter-party, in their own names, on behalf of all the defendants; and as the charter-party was not under seal, it was competent for the plaintiffs to show that it was executed by Duncan & Poey, not only for themselves, but as representing all those who chartered the steamship. They may, therefore, be treated as agents executing the charter-party for themselves and all others interested as principals with them. (*Briggs* v. *Partridge*, 64 N. Y., 357; *Hill* v. *Miller*, 76 id., 32; *Nicoll* v. *Burke*, 78 id., 580.)

The charter-party contained this stipulation: "The said party of the first part agree that the said vessel in and during the said voyage shall be kept tight, staunch, well-fitted, tackled and provided with every requisite for such a voyage." It appeared that the vessel went to Galveston and there took on a cargo of fresh beef and started upon her return voyage, and that before reaching her destination the beef spoiled and was thrown overboard and was thus wholly lost. The defendants claimed that the loss was occasioned by reason of the defective condition of the boiler and machinery of the vessel in consequence of which she was greatly delayed in making her voyage. Soon after her return Duncan & Poey commenced a suit in admiralty against the steamship and her owners to recover damages for the alleged breach of the charter-party in failing to keep the vessel well-fitted and provided with every requisite for the voyage, claiming, that in consequence thereof, the beef was lost and that they sustained great damage. That suit passed through the Federal courts to the Supreme Court of the United States, and the opinion

pronounced therein in the latter court is reported in 105 United States Reports, 381. The libel in that suit was dismissed on the ground that the defendants in that suit, the owners of the vessel, " had kept and performed all the covenants and undertakings in the said charter-party contained on their part, and that the said vessel, in and during said voyage, was kept tight, staunch, well-fitted and tackled, and provided with every requisite for the voyage." One of the conclusions of law found in the record of that court is as follows : " That libelant having failed to prove that the damage to the cargo of fresh beef on said steamer was the direct and natural result of any breach of the covenant of seaworthiness in said charter-party, are not entitled to recover such damages in this action." The judgment recovered in that suit was received in evidence upon the trial of this action, and it was held by the trial judge that it conclusively established that the plaintiffs had fully performed the charter-party on their part, and that the defendants were not entitled to any damages for any alleged breach of covenants therein contained, and that the plaintiffs were entitled to recover the balance of the charter money due. In these holdings, upon the plainest principles, there was no error. The adjudication in that suit was binding upon the parties thereto, and upon those whom they represented and who were in privity with them. Duncan & Poey, who were the libellants and plaintiffs in that suit, represented the charterers and prosecuted the suit, not only for themselves but for all their associates. Hence, while their associates were not actually parties to the suit, they would have reaped the benefit of a favorable result, and were bound by the judgment rendered therein. They had a right to be heard in the suit, and were heard through Duncan & Poey, and were in privity with them. It was just as much their suit as the suit of Duncan & Poey, and the precise points at issue in that suit and adjudicated therein could not again be brought in question between these plaintiffs and the charterers of the vessel. (*Embury* v. *Conner*, 3 N. Y., 511 ; *Castle* v. *Noyes*, 14 id., 329 ; *Tuska* v. *O'Brien*, 68 id., 446 ;

*Dunbar* v. *Bower*, 77 id., 76; *Church* v. *Kidd*, 88 id., 652; *Leavitt* v. *Wolcott*, 95 id., 212.) There was, therefore, no error in holding that the adjudication in the admiralty suit bound these defendants and conclusively established the performance of the charter-party on the part of these plaintiffs. Hence there was nothing left for litigation between the parties upon the merits of the case.

But the point is made that the plaintiffs ought to have been defeated because they did not include in the action, as parties defendant, R. Ross Roberts, J. Kemp Bartlett and James F. Matthews, whose names are mentioned in the answer of the defendants. This is an extremely technical defense, and, so far as we can perceive, of no real consequence to any one. If successful, it would simply result, after a long litigation between these parties, through all the Federal courts and through the courts of this State to its highest tribunal, in a reversal of this judgment and the bringing in of the three persons named as defendants, and then a judgment against all the defendants would be inevitable. A defense thus technical should be closely scrutinized and should not be permitted to prevail if upon any permissible view of the case it can be avoided. It was proved, upon the trial, that all the persons named in the answer were interested in the adventure of bringing beef from Galveston to Philadelphia. Stephen and James M. Flanagan were interested to the extent of one-fifth ; Wilson, one-fifth ; Duncan and Poey one-fifth ; Roberts one-fifth, and Bartlett and Matthews together one-fifth. If the plaintiffs had known, at the time they entered into the charter-party, that these several persons were interested as claimed, it would have been their duty to make them all defendants in the action ; and in that event the contract would really have been made with them all. But if at the time of making the contract the three persons referred to were not known to the plaintiffs to be joint contractors with the defendants, and they supposed that they were contracting with the defendants only, then the three persons named could be treated as dormant partners, and it was not necessary to make

them parties defendant. (*Brown* v. *Birdsall*, 29 Barb., 549 ; *Farwell* v. *Davis*, 66 id., 73 ; *Arnold* v. *Morris*, 7 Daly, 498 ; *North* v. *Bloss*, 30 N. Y., 374 ; *Leslie* v. *Wiley*, 47 id., 648 ; *Marvin* v. *Wilber*, 52 id., 270 ; *Cookingham* v. *Lasher*, 1 Abb. Ct: App. Dec., 438 ; *Bonfield* v. *Smith*, 12 M. & W., 405 ; *De Mautort* v. *Saunders*, 1 B. & Ad., 398, 401; Collyer on Partnership, § 719.) It is not sufficient that the plaintiffs may have known that the three persons named had some sort of interest in the adventure, but they must have known that they were members of a firm with the defendants, or that they were joint contractors with them ; and this there was no sufficient evidence in the case to show.

The answer is insufficient. It simply shows that the three persons named were interested in the adventure. There is no allegation that they were partners, nor is there any allegation that they were joint contractors with the defendants named, or that the plaintiffs made any contract whatever with them. The proof simply shows that at the time of the making of the charter-party the plaintiffs knew that they were contracting with these defendants, and had information that some other persons had some slight interest in the adventure. But they had no knowledge that such other persons were interested as partners, or that they were parties to the contract which they were then making. They may have supposed, as their names were not mentioned, and had a right to suppose, that they had some remote or contingent interest in the profits or proceeds of the adventure, while they were not, in any proper sense, parties to the contract. Upon this point the case recently decided by us of *Swift* v. *Pacific Mail Steamship Company*, and *Panama Railroad Company*,\* is an authority. This may be regarded as a somewhat narrow view of the evidence given upon the trial, but we think it is admissible for the purpose of defeating what appears to us to be an extremely technical objection.

Some other points were discussed upon the argument before

---

\* *Ante* page 206.

us, but they are not deemed to be of sufficient importance to require particular attention here. They have received sufficient consideration, and we think point out no error.

Our conclusion, therefore, is that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.