GODDING, APPELLANT, v. THE COLORADO SPRINGS LIVE STOCK COMPANY, APPELLEE.

1. RES JUDICATA.

A point once adjudicated by a court of competent jurisdiction may be relied upon as an estoppel in any subsequent suit in the same or any other court where either party or the privies of either party allege anything inconsistent with it.

2. EVIDENCE.

The identity of the issues to be tried being established by an examination of the respective records, an answer setting up a former adjudication as a defense should be allowed to stand, as parol proof is admissible to show the proceedings had upon the former trial and the part taken by the assignor of the party pleading it.

3. PRACTICE.

An answer having been filed under leave of court, it is not competent

for another judge to order it stricken from the files because not filed in apt time.

4. FRAUDULENT REPRESENTATIONS.

Mere expressions of opinion are not false representations. A misstatement, to be actionable, must relate to existing facts peculiarly within the knowledge of the party making them.

5. MEASURE OF DAMAGES.

When it has been found that there has been a breach of contract with reference to necessary feed and water for a herd of cattle, or that the owner thereof was a victim of false representations, he should either supply the cattle by moving them to water, or rescind the contract and move them to proper quarters. In one case the increased cost and inconvenience of watering and feeding is the measure of damages; in the other the cost of moving and the extra cost of feed and feeding facilities over the contract price.

*Appeal from the District Court of El Paso County.*

THIS was an action brought by the appellee to recover damages for failure to perform a contract, and for alleged false representations alleged to have been made by appellant in procuring the contract to be made.

Appellant in 1888 being in control of an alfalfa ranch in Weld county—the title being in his father—entered into a contract with appellee, which was engaged in handling and feeding cattle, to sell to it the hay produced upon the ranch for three years, from 600 to 1200 tons per year, to be by appellant put in stack. Appellee was to receive the hay so stacked upon an agreed standard of measurement, and pay $5.50 per ton. Appellee was to have the pasturage of the place and feed and keep the cattle upon the ranch. The hay was measured and accepted by appellee in the fall of 1888, and in December cattle estimated at one thousand in number were placed on the ranch under the care of the agents and employees of appellee, and remained until the crop of hay was consumed, when they were removed to another place. The hay was paid for by appellee, and it does not appear that any claim of violation of contract or false representations on the part of appellant was made by appellee until some time subsequent. The greater part of the price of the hay was paid

in the spring, long after the supposed wrongs and injuries occurred, but no attempt was made to set off or recoup the alleged damages, and this suit was brought to recover them.

It was alleged that appellant contracted that the hay should be of good quality; that some of it was not properly cured, and spoilt in the stack ; that some of it was cut so late it was injured by frost and unfit to feed; that appellant represented that there was a plentiful supply of running stock water continuously upon the place, and would continue through the winter, when in fact the water was deficient in quantity, and unhealthy and unfit in quality ; that appellee had no knowledge of the facts, but, relying upon the representations of appellant, entered into the contract; that, by reason of the bad quality of the hay and want of an adequate supply of good water, it lost a large number of cattle, indefinitely estimated from 350 to 500 head.

It appears appellee had no definite knowledge of the number placed upon the ranch, the number that died, or the number of surviving cattle removed, and although the food upon the Godding ranch was exhausted and the cattle removed to another place, the estimate of loss appears to have been made in the spring following.

The cattle were put on the Godding ranch in December and January, remained there about three months, were then removed to Matthews' ranch near by, and remained about two months. The condition of Matthews' ranch as to water supply was about the same as at Godding's, hay about the same quality. It is shown that the supply of water on the Godding ranch was inadequate by reason of severe freezing, also that at a distance of from $\frac{1}{4}$ to $\frac{1}{3}$ of a mile was Idaho creek, in which there was an abundance of water, and to which the stock had access. It is alleged that, by reason of want of water and poor hay, 192 head of stock died upon the Godding ranch and 150 afterwards upon the Matthews ranch.

Defendant answered, denying the allegations of the complaint. Afterwards, leave was obtained and an amended answer filed, alleging that in December, 1888, appellant assigned

his contract with appellee, by and with its consent, to T. F. Godding; that in the fall of 1889 T. F. Godding had put up the hay crop of that season as required by contract, notified appellee, and required it to measure up and receive the hay—which it declined to do, and gave notice of its rescission of the contract; that in February, 1891, T. F. Godding brought suit upon the contract for damages sustained.

The defendant appellee answered setting up the facts and allegations contained in the complaint in this case as appears upon examination.    That upon the trial of the issue so made plaintiff obtained judgment, from which an appeal was taken to this court, where the judgment was affirmed; alleging also that " all and every matter and thing involved in this action was fully adjudicated and determined both as between the said plaintiff, T. F. Godding, as well as the plaintiff and John E. Godding."

On June 8, 1892, plaintiff (appellee) filed its motion to strike the supplemental answer from the files, " Because the same was not filed in time, that no showing had been made to warrant the answer, and that it was filed after the case was set for trial."

The motion was sustained, the answer stricken out, trial had upon remaining issue by a jury, resulting in a judgment for plaintiff of $5,400.    Numerous errors are assigned, those relied upon in argument being the striking out of the answer, the refusal to allow certain testimony of the defendant, and the instructions given and refused.

Mr. B. L. CARR and Mr. F. P. SECOR, for appellant.

Mr. WILLIAM HARRISON and Mr. J. W. McCREERY, for appellee.

REED, J., delivered the opinion of the court.

This case is peculiar in one aspect of it, showing the extent to which results are influenced by the place of trial.

T. F. Godding brought suit upon the contract for its breach, in Weld county, where he resided. Appellee brought suit in the county of its residence, El Paso, against John E. Godding, on matters pertaining to the same contract. In the first, plaintiff obtained judgment for over $2,000, in the latter plaintiff obtained this judgment for $5,400. An examination of the allegations in appellee's answer in the first, and the allegations of its complaint in the latter, show them to be identical, hence, we have the anomaly of the same issue being tried twice in different courts, with the differing results stated. The whole policy of the law is against the re-trial of issues once determined by a court of competent jurisdiction. Such has been the well settled and unquestioned policy from the leading case of *Outram v. Morwood*, 3 East, 346, to the present time. *Duchess of Kingston's Case*, 2 Smith Leading Cases, 424; See Cooley on Constitutional Limitations, 47; Ram on Legal Judgments, chap. 14; 2 Phil. on Ev. 50, and note; *Young v. Black*, 7 Cr. 567; *Williams v. Hacker*, 16 Colo. 113.

" The rule in these cases is, that a point once adjudicated by a court of competent jurisdiction may be relied upon as an estoppel in any subsequent suit in the same or any other court at law or chancery *where either party or the privies of either party* allege anything inconsistent with it." *Aurora City v. West*, 7 Wal. 82.

The contract was made by John E. Godding, was by him assigned to T. F. Godding, as alleged with the knowledge and consent of appellee; it was a non-negotiable instrument, the assignee took it subject to all the existing infirmities, including the alleged fraud in its procurement, which if established would destroy it. The privity required by law existed by the relation the two Goddings bore to each other and the subject-matter of the contract. It is claimed in argument by appellee that the judgment in Weld county could not operate as a bar because the parties were not identical. It is not necessary that the parties should be identical according to the rule laid down in *Aurora City v. West, supra,* where it is

stated that privity is sufficient. On this point authorities are numerous. See Herman on Estop. § 152; *Emory v. Fowler*, 39 Me. 326; *Jennings v. Shelden*, 44 Mich. 92; Wells Res. Adjud. § 16; *Dunham v. Bower*, 77 N. Y. 76; *Woodhouse v. Duncan*, 106 N. Y. 527.

The right of T. F. Godding to recover was dependent upon the right of John E. to recover, had there been no assignment. In order for John E. to recover, with the issues of fraud and misrepresentation, he must overcome the allegations of the answer. So must T. F. Godding. The question was not whether John E. was a party but whether the same questions had been adjudicated in a controversy pertaining to the same transaction.

The identity of the issues to be tried being established by an examination of the respective records, the answer should have been allowed to remain and a trial had, as parol proof was clearly admissible to establish the proceedings had upon the former trial and the part taken by John E. Leave having been obtained of the court and entered of record and the answer filed, such leave being discretionary with the court, another judge could not order it stricken from the files at a subsequent date because not filed in apt time. Nor was the fact that the case had been set for trial prior to the leave and filing of the answer of any importance, as it could have been vacated at any time if necessary. The answer was sufficient in form and substance to raise the question of a former adjudication. The policy of the law is clearly against a second adjudication of the same questions, and the court erred in striking the answer from the files.

It is very doubtful whether under the authorities a cause of action is shown by the complaint. It was found that no cause of action accrued in regard to the quality of the hay. The only remaining cause of action was the alleged misrepresentation in regard to the water supply. It would appear that the agents of appellee, when placing the cattle there, found the supply adequate and as represented; consequently, if appellant was to be held, it must have been upon the alle-

gation that he *represented it would remain adequate.* Under the authorities, it is doubtful if such misrepresentation is actionable. It is perhaps the mere expression of an opinion for which a person cannot be held responsible. The case seems to have proceeded upon the theory that he was an insurer, which was clearly not the case; had he been, the suit must have been on the warranty and not on the tort. These are suggestions made for the guidance of the court in case of retrial.

Mere expressions of opinion are not false representations. A misstatement, to be actionable, must relate to existing facts peculiarly within the knowledge of the party: *Stimson v. Helps,* 9 Colo. 33; *Adams v. Schiffer,* 11 Colo. 29; Cooley on Torts, 474–486; 1 Hil. on Torts, chap. 1, § 4; *Sawyer v. Prickett,* 19 Wal. 146; *Cooper v. Schlessing,* 111 U. S. 148; 1 Perry on Trusts, § 173.

The following instruction was given by the court and an exception taken:

"If the jury find the issues for the plaintiff, as explained above, then the measure of damages is the reasonable market value of the cattle lost, as shown by the evidence, if any were lost by reason of the insufficiency or unwholesomeness of the water aforesaid, and also the difference in value, if any, between the herd as wintered, and as recovered and driven away by the plaintiff, and the value thereof, if the same had been properly supplied with good water in sufficient quantities."

The measure or rule of damages is incorrect, the instruction should not have been given. Neither appellant nor his assignee were insurers of the lives or health of the herd.

The agents of appellee, before placing the cattle upon the ranch, visited it, measured and accepted the hay, knew the character and condition of the water supply, and with knowledge of all of these facts placed the herd there some two months later *in charge of its own agents and employees.* There was an abundance of running pure water accessible within less than half a mile, appellee could not subject its cattle to

death from thirst or poison from the impurities of the water, look on and see the whole herd die from inattention, and collect its value as damages. When it was found either that there was a breach of contract or it was the victim of false representations, it should either have supplied the cattle by driving to water or have rescinded the contract and moved to proper quarters. In one case the increased cost and inconvenience in watering and feeding would have been the measure of damage, in the other the cost of moving and the extra cost of hay and feeding facilities over the contract price.

No rule of damages making the contractor an insurer of the herd and charging him with the value of all dead cattle can be correct, when the stock at no time was under his control or subject to his directions.

The judgment must be reversed and cause remanded for a new trial.

*Reversed.*