## STOUGHTON *against* LYNCH.

Where articles of copartnership stipulated, that the *capital* and *profits* of the company should remain in the house, and be employed, during the copartnership, for the benefit of the concern, each party being at liberty to withdraw from the joint funds so much only as was necessary for his private expenses ; it was held that neither party had a right to withdraw from the funds money to purchase plate, household furniture, carriages, horses, &c. but only for family expenses, and the reasonable education of children, &c. If one partner withdraws or uses the partnership funds, in his own private trade or speculations, he must account not only for the *interest* on the moneys so withdrawn, but for the *profits* of that trade.

THIS was a bill for an account between the parties, as partners in trade. The articles of copartnership were dated the 10th of *March*, 1783, both parties then residing in the *United Netherlands*. By these articles, the parties agreed to establish a trading house at *New-York ;* and the plaintiff was to proceed to *New-York*, for that purpose, as soon as possible, after the 1st of *May*, ensuing. The partnership was to continue for seven years after the plaintiff's arrival in *New-York*, and then six months after notice of separation. The plaintiff was to be the active partner, or to take the labouring oar, and the profits were to be equally divided. The capital was to be 7,500 pounds sterling, of which the defendant was to furnish 5,000 pounds, and the plaintiff the residue ; and to pay an interest of five per cent. on his deficiency of capital. *The capital and profits to re-*

main in the house, and be employed for the benefit of the concern, during the partnership, withdrawing such part only as may be necessary for private expenses. The defendant proposed to establish himself at *Philadelphia.* A fair balance of the books of the firm was to be made, signed, and approved by the parties, annually. Neither party was to do business at *New-York,* on their private account, during the partnership, nor lend any of the capital stock, nor enter into any acceptances, for account of the partnership, without mutual consent, each party doing his best to promote the advantage of the company; the plaintiff was to carry out to *New-York* 1,000 pounds sterling. The partnership was dissolved in *July,* 1795.

The *decretal order* of reference, of the 6th of *July,* 1814, to a master, to take and state an account between the parties, directed the defendant to be charged with *interest* upon all such sums of money as he may have drawn out of the co-partnership funds beyond the amount necessary for his private expenses.

The master, in his *report,* stated, that the defendant claimed, under the head of charges necessary for his private expenses, (1.) 1,200 dollars, for his family expenses at *Bruges,* from the 6th of *October,* 1783, the day on which the plaintiff commenced business at *New-York,* to the 1st of *April,* 1784. (2.) 500 dollars, expenses of removing from *Bruges* to *London,* in *April,* 1784. (3.) 5,000 dollars expenses in *London,* from the 1st of *April,* 1784, to the 1st of *April,* 1785. (4.) 1,500 dollars, for expenses from that day until the defendant's arrival in *New-York,* including the passage. (5.) 5,610 dollars, for plate, harpsichord, carriage and horses, and furnishing a house in *New-York.* (6.) 1,260 dollars, annually for rent of a house in *New York,* from the 1st of *April,* 1788, to the 3d of *July,* 1795. (7.) 1,050 dollars, annually, expenses of educating four children, from 1792 to *July* 3d, 1795. All these charges were disallowed by the master, and *exceptions* were taken by the defendant.

The points discussed and decided, arose on these excep-
tions, and for further directions to the master.

*T. A. Emmet*, *Riggs*, *D. B. Ogden*, and *P. J. Munro*,
for the defendant.

*Harison* and *Wells*, for the plaintiff.

THE CHANCELLOR. The articles of copartnership in-
tended to preserve, in a state of progressive accumulation,
the funds of the house; and the clause upon which the ques-
tion before me has arisen, is to be taken strictly. This is
evidently the sense and spirit of the agreement. It is ex-
pressly stipulated, that the capital *and profits* of the com-
pany were to *remain* in the house, and *to be employed* for
the benefit of the concern, during the partnership, with this
special exception, that such part *only* was to be withdrawn,
as might be *necessary* for *private expenses*. And to show
the care with which the parties guarded the funds from be-
ing diverted by either of them, it was further stipulated that
neither of them was *to do business at New-York on their
private account*, nor *lend any of the capital stock*, or enter
into acceptances; but each party was *to do his best* to
promote the advantage of the company. After reading these
articles, it is impossible not to view most of the charges
which the defendant wishes to include under the special ex-
ception as palpably inadmissible. To consider plate,
musical instruments, carriage and horses, and the whole
furniture of a house, as coming within the permission granted
to the parties to withdraw the funds of the house *only* when
*necessary* for *private expenses*, is, in my judgment, an un-
reasonable and extravagant pretension. The object of the
decretal order, of last *July*, was, not to exempt from interest
all those moneys withdrawn that were not supposed to be
employed in land speculations. I then observed, that if the
funds so withdrawn had been employed in trade, the party

would have had to account, not merely for interest, but for the profits of that trade; and we find authority for this in *Brown* v. *Litton*, (1 *P. Wms.* 140.,) and in *Crawshay* v. *Collins*, (15 *Ves.* 218.,) where the principle is stated, that if one partner trade alone on a joint stock, he shall divide the profits. The least that I could do, in this case, was to make him pay interest on all moneys withdrawn beyond the private necessity expressed in the contract. The interest of the parties as joint traders, the obvious policy and meaning of the contract, and that good faith which is the animating principle in all mercantile associations, unitedly concur in recommending us to view the claims set up by either party, under the exception, with a jealous and scrupulous eye. Without such a rule of construction, a partnership, like the present, with all its provisions to preserve the funds of the house untouched, might soon languish under the carelessness, or dissipation, or discordant and rival views, of either of the contracting parties.

The parties, then, had in view, that funds were to be withdrawn only when necessary for private expenses; and when at any time withdrawn, the party must have done it with a view to that necessity. That must have been *the purpose* for which they were withdrawn. The more safe and regular way would have been, to have stated, in each case, the object of the appropriation, so that each party, at the end of every year, when a fair balance of the books, according to the articles, was to be made, signed, and approved, might have known and judged of the requisite appropriation. But it would, perhaps, be too rigorous to require the production of such an original entry to justify every such appropriation; and I am willing even to presume, that a fair and reasonable sum, drawn away in each year, was necessary for the private expenses of each individual partner during that year. Beyond this presumption I cannot go. All the *European* expenses of the defendant are, therefore, to be laid out of the case, because, as I under-

stood from the suggestions of the counsel upon the argument, there was no concurrent, or any thing like cotemporary, appropriations, or drafts, with any presumed reference to those expenses. I am to presume, then, and I do presume and believe, that the defendant never deemed it necessary, at the time, to recur to the permission granted under these articles, to meet and defray those expenses. The idea of including them under this article was an after-thought, arising many years after those expenses had been borne and forgotten.

With respect to the moneys drawn out by the defendant, after his arrival and settlement in this country, (and no moneys were called for by him before,) it may be difficult to estimate the allowance that ought reasonably to be made for necessary private expenses; for *so far*, and no farther, I can presume the moneys diverted by the defendant within any given year, were applied. It ought to be observed, that the inquiry is, not what the defendant ought to have as suitable to his establishment and fortune, but how much we can fairly presume he thought proper to draw out of the funds of this company for that object. If no money was drawn out, in any given year, by the defendant, I am to presume he elected to support his family, for that year, out of *other funds*, and deemed it most advantageous that his portion of the funds of this company (and which was, probably, only a small part of his estate) should continue to be employed in the business of the concern. On this ground, therefore, I cannot presume, and unless the defendant can furnish the proof to the master, I cannot allow, that any part of the funds of the company were withdrawn to meet the interest of the moneys with which he built the house in which he lived. If the defendant was able to build and occupy such a house with other funds, it is impossible to suppose he thought it necessary to curtail his capital in this company, to pay himself for living rent free in his own house. No prudent man would so abuse and misapply his own funds.

1815.

STOUGHTON
v.
LYNCH.

He either withdrew the funds because he wanted them for actual current expenses, or for some purpose unauthorized by his contract. I am, therefore, of opinion, that the charge of rent was properly rejected by the master. The expense of his family, and the reasonable education of the children, may be fairly presumed to have been supported out of funds drawn from the concern within the year ; and the only charge in the master's report, which, I think, was a proper subject of allowance, to a certain extent, was that of the expense of education of the children of the defendant ; the proper sum which the master is to allow for that education, as well as for the other expenses of the family, must depend upon what shall appear to him to be a reasonable allowance to a person of the defendant's rank and business, and under all the circumstances of the case. This allowance, however, for any given year, is, in no case, to exceed the amount of the moneys drawn out by the defendant within that year: Beyond that sum, I have no ground for any presumption and allowance ; and if the defendant made no diversion of the funds of the company in any given year, I shall contend, that he elected to let these particular funds flourish, for that year, in the business of the concern, and to support his family out of other parts of his estate less beneficially employed.

The exceptions are, accordingly, overruled, with costs ; and the master must have further directions, according to this opinion.

Rule accordingly.