## BROWN *vs.* BIRDSALL and others.

Where joint debtors reside in different states, they may be sued separately in the states having jurisdiction of their respective persons or property ; and a judgment in such case, against one, in one state, is no bar to a recovery against the others, in another state.

Persons giving credit to a firm, supposed to consist of five persons, without any knowledge of two other partners, in the absence of any allegation or proof that the connection of those two with the firm was notorious, or was in any way disclosed, have the right, but are not bound, to sue all the partners.

APPEAL from a judgment entered upon the report of a referee.

*By the Court,* ROOSEVELT, P. J. This action, and all the issues in it, were referred to Mr. Scudder to hear and determine, on motion of the defendants Birdsall and Mather, who now complain of the referee's report, having taken, it is stated, " more than one hundred exceptions to his decisions" in the course of the trial. These exceptions the plaintiff's counsel has classified under various heads ; some as " unfounded ;" some as " nullities ;" some as " frivolous," and some as " simply nonsensical." As they are all, or nearly all, more or less connected with the pervading one arising out of an alleged " *defect of parties,*" I shall confine myself mainly to the examination of that question.

The defendants are five in number. The complaint alleges that they were " partners in trade doing business under the firm name and style of A. Birdsall & Co. ;" and that the goods for the price of which the suit is brought, were sold and delivered " to the said firm of A. Birdsall & Co. ;" in other words, to the five named defendants. Mather, in his answer, denies, first, any knowledge of the plaintiff's claim, and alleges, in addition, that the firm, besides the five persons made defendants, consisted of Burr Higgins, a resident of North Carolina, and George S. Runey, a resident of Massachusetts ; and that the complaint, by reason of the omission of their names, is defec-

tive, and for that defect should be dismissed with costs; thus tendering an issue on the merits and in abatement, in one and the same pleading—a position which, however inconsistent with itself and with the old practice, is tolerated, it is said, by the code. Assuming that to be so, and that the objection to answering is not overruled by answering, it is sufficiently met, as I conceive, by the two following considerations: *First.* The referee finds, as matter of fact—and there is no sufficient ground in that respect for setting aside his verdict—that the goods were sold and delivered " to the *defendants.*" The contract, therefore, was made with them; and there is a necessary implication that the plaintiff, at the time of the sale, knew nothing of the other two dormant partners. Indeed the answer does not deny that the contract, if any, was made, as alleged by the plaintiff, with the five defendants; nor does it aver that the plaintiff had any knowledge of the other two partners, or that their connection with the firm was notorious, or that it was in any way disclosed. In such cases, persons giving credit to a firm have the right, but are not bound, to sue all the partners. (*De Mautort* v. *Saunders*, 1 *B. & Adol.* 398.) *Second.* The two dormant partners being residents of other states, no effectual remedy in this state could be had against them. It is not pretended that there was any joint property of the seven within the jurisdiction of the court. A special judgment, therefore, under the statute, would, as to the two absentees, have been little more than *vox et preterea nihil.* The law allows, but does not compel, the statute procedure. Indeed it might be questioned whether the legislature had power even to *authorize* a suit, in this state, against a citizen of another state, without having either his person or his property within the jurisdiction. We ourselves, in the celebrated divorce case of *Borden and Fitch*, have treated a judgment rendered in Vermont in such a suit as a mere nullity; and we could hardly claim for our own courts a power which, under like circumstances, we had denied to those of a sister state.

The ancient practice in these cases was to outlaw the non-

Brown *v.* Birdsall.

appearing parties, and then take judgment against the others alone. In 1830, however, (2 *R. S. 553*,) the legislature abolished " all process and proceedings to outlaw any defendant in a civil action." The necessary result of this change would seem to be a permission in suits against joint debtors to omit such as could not be served. Nor does the joint debtor act, if its true interpretation be as above stated, alter the case. In that view it is an enabling and not a compulsory act ; enabling where there is property to be affected by the judgment, and not compulsory where there is none. The court is not to intend that the legislature contemplated either an impossibility or a nullity ; that parties should be sued who could not be summoned ; or that judgments should be obtained which could not be executed.

It may be laid down, I think, as a sound proposition, that where joint debtors reside in different states, they may be sued separately in the respective states having jurisdiction of their respective persons or property, and that a judgment in such case, against one in one state, is no bar to a recovery against the others in another state.

As to the cost of the hundred exceptions, they were either unimportant, or if well taken when first stated, were superseded by subsequent testimony, mostly on the part of the defendants themselves.

Judgment for the plaintiff on the report of the referee affirmed, with costs.

[NEW YORK GENERAL TERM, February 6, 1859. *Roosevelt, Clerke* and *Davies,* Justices.]