BENJAMIN R. KITTREDGE, Appellant, *v.* WILLIAM C. LANGLEY, Respondent.

(Argued December 4, 1929; decided January 7, 1930.)

*R. Randolph Hicks, George F. Canfield* and *Evelyn P. Luquer* for appellant. The fact that the judgment for the partnership debt could be rendered only against the resident partner, the other being out of the jurisdiction of the court, is immaterial, since the debt established in such an action does not lose its character of a partnership debt, but remains in equity a charge on the partnership property within the State of New York and the jurisdiction of its courts. (Burdick on Partnership [1st ed.], 77; Lindley on Partnership [4th ed.], 1054; Warren on Corporate Advantages without Incorporation, 148–150, 245; *Brown* v. *Birdsall*, 29 Barb. 549; *Crehan* v. *Megargel*, 234 N. Y. 67; *Heckermann* v. *Young*, 134 N. Y. 170; *Whittemore* v. *Elliott*, 7 Hun, 518; *Atkins* v. *Prescott*, 10 N. H. 120; *Parker* v. *Danforth*, 16 Mass. 299; *Gay* v. *Johnson*, 32 N. H. 167; *Elliott* v. *Stevens*, 38 N. H. 311; *Inbusch*

v. *Farwell,* 66 U. S. 566; *Lord* v. *Baldwin,* 6 Pick. 348; *Howe* v. *Kane,* 2 Chandler [Wis.] 222.) The fact that the plaintiff is not entitled to a judgment at law under the provisions of sections 1197–1201 of the Civil Practice Act relating to joint judgments and remedies for their enforcement does not deprive the plaintiff of his equitable rights. (*Brown* v. *Birdsall,* 29 Barb. 549; *Lane* v. *Salter,* 51 N. Y. 1.) The plaintiff having established at law his claim as a firm creditor and having exhausted all his available remedies at law, is entitled to relief in equity against the equitable assets of the firm, although he has been unable to obtain a judgment in form against that firm. (*McCartney* v. *Bostwick,* 32 N. Y. 53; *National Bank* v. *Wetmore,* 124 N. Y. 241; *People ex rel. Cauffman* v. *Van Buren,* 136 N. Y. 252; *Sherman* v. *Skuse,* 166 N. Y. 345; *DeCoppet* v. *Cone,* 199 N. Y. 56; *Trotter* v. *Lisman,* 209 N. Y. 174.) The assets of a partnership, and especially the special capital of a limited partnership, are held subject to an equity in favor of the firm creditors. The special capital of a limited partnership is part of the firm's assets, as such is primarily liable with the general assets for the firm's obligations, and, therefore, cannot be withdrawn at the dissolution of the partnership before all claims against the firm have been paid. (*Ames* v. *Downing,* 1 Bradf. Sur. 321; *Green* v. *Breck,* 32 Barb. 74; *Wilson* v. *Robertson,* 21 N. Y. 587; *Menagh* v. *Whitwell,* 52 N. Y. 146; *Bulger* v. *Rosa,* 119 N. Y. 459; *Van Alstyne* v. *Cook,* 25 N. Y. 489; *Bell* v. *Merrifield,* 109 N. Y. 202; *Fuhrmann* v. *von Pustau,* 126 App. Div. 629; *Coffin's Appeal,* 106 Penn. St. 280; Burdick on Partnership [1st ed.], 382; *Harris* v. *Murray,* 28 N. Y. 574; *Met. Bank of New York* v. *Sirrett,* 97 N. Y. 320; *Casola* v. *Kugelman,* 33 App. Div. 432.) The plaintiff is entitled to recover interest. (Civ. Prac. Act, § 480; *Stoughton* v. *Lynch,* 1 Johns. Ch. 467; *Andrews* v. *Durant,* 18 N. Y. 496; *Mayor of New York, etc.,* v. *Sands,* 39 Hun, 519; *Gilmore*

v. *Hirschman,* 188 App. Div. 218; *Bell* v. *Merrifield,* 109 N. Y. 202.)

*R. E. T. Riggs* and *A. S. Gilbert* for respondent. The plaintiff failed to prove the allegations of his complaint. (*Hall* v. *Lanning,* 91 U. S. 160; *Bienestok* v. *Ammidown,* 155 N. Y. 47.) A special partner cannot be held liable for torts of the general partners. (*Mc Knight* v. *Ratcliff,* 44 Penn. St. 156.) The defendant had an absolute right to withdraw his capital contribution from the firm. (*White* v. *Eiseman,* 134 N. Y. 101; *Fifth Avenue Bank* v. *Colgate,* 120 N. Y. 381; *President, etc., of Manhattan Co.* v. *Laimbeer,* 108 N. Y. 578; *Fuhrmann* v. *von Pustau,* 126 App. Div. 629; *Bliss* v. *Hornthal,* 33 App. Div. 225; *Baily* v. *Hornthal,* 154 N. Y. 648; *Bell* v. *Merrifield,* 28 Hun, 219.) The plaintiff was never the owner of a " debt " nor a " creditor " until his claim was put into judgment. (*Matter of Putnam,* 193 Fed. Rep. 464; *Matter of Kendrick & Co.,* 226 Fed. Rep. 978; *Mock* v. *Stoddard,* 177 Fed. Rep. 611; *Matter of Weisenberg,* 131 Fed. Rep. 517.)

CARDOZO, Ch. J. The action is in equity against the special partner in a limited partnership to charge him with liability to the extent of his capital contribution withdrawn from the partnership at or about the time of dissolution.

Grannis and Lawrence were stockbrokers in the city of New York. They formed in 1907 a limited partnership in which the present defendant, Langley, became the special partner with a capital contribution of $80,000. On May 1, 1908, when the term of the limited partnership expired, its assets were left in the possession of a general partnership formed by the same partners, the debts being assumed. This latter partnership continued for a month only, and on June 1, 1908, was dissolved and liquidated. Langley and Lawrence acted as the liqui-

dators. To Langley there was paid the $80,000 which he had contributed to the limited partnership. Grannis received a seat on the New York Stock Exchange, valued at that time at $71,000, which had been his contribution to the capital, and also $7,412.11 cash. Lawrence received cash in the amount of $10,599.70. There were no unpaid claims other than the plaintiff's which amounted at that time to about $82,000, though by now with the accrued interest it has more than doubled. Notice of this claim had been given to the partnership in May, 1908, but not till April, 1914, was there any action to enforce it.

The action, when begun, was in tort for conversion. The two general partners, Grannis and Lawrence, and the special partner, Langley, were named as defendants, but the summons was served on Lawrence and Langley only. Plaintiff had a verdict except as to the defendant Langley, as to whom the complaint was dismissed, for the reason that he was a special partner. Judgment was entered on the verdict against the firm of Grannis & Lawrence, Grannis not being served (Civ. Prac. Act, § 1197); and execution issued upon that judgment against the individual property of Lawrence and the joint property of the firm was returned unsatisfied. Thereafter, the defendant Grannis, appearing specially for that purpose only, moved to amend the judgment by striking his name therefrom on the ground that Civil Practice Act, section 1197, is limited by its terms to actions upon contract, and is not to be extended to one in tort for conversion. The Appellate Division upheld that contention, and its order modifying the judgment was affirmed by this court (*Kittredge* v. *Grannis*, 234 N. Y. 501). Still later, the judgment as thus modified was reversed and a new trial granted, for errors in the charge (*Kittredge* v. *Grannis*, 236 N. Y. 375).

The plaintiff, coming back for a new trial, changed his complaint from one in tort to one in quasi-contract, charging the same acts, however, that he had charged

at the beginning. Again the plaintiff had a verdict, on which judgment was again entered against the firm under Civil Practice Act, section 1197, and execution against the firm property and against the individual property of Lawrence returned unsatisfied. Grannis again moved to amend the judgment by striking out his name. The Appellate Division affirmed the judgment and also an order denying the amendment. Upon appeal to this court, the judgment was affirmed (*Kittredge* v. *Grannis*, 244 N. Y. 168), but the order denying the amendment was reversed and the amendment granted (*Kittredge* v. *Grannis*, 244 N. Y. 182). We held by a closely divided vote that since the action was in tort at the beginning, the amendment changing it to one in contract, though effective as to Lawrence, was ineffective as to Grannis. " In view of the allegations of the original complaint the defendant Lawrence appeared at the trial only as an individual in defense of his own interests; the court could not give judgment which would affect the interest in joint property of other defendants not served " (per LEHMAN, J., 244 N. Y. at p. 194).

The plaintiff began in the meanwhile the present suit in equity. The theory of the suit is that he has exhausted the legal remedies available against the general partners, and that the capital withdrawn by the special partner is now chargeable in equity with liabilities unpaid. The defendant, the special partner, maintains in opposition: (1) that the plaintiff has not exhausted his remdies at law; (2) that he has not established his claim by any judgment binding upon the special partner or by evidence *dehors* the judgment; and (3) that the capital contribution was rightfully withdrawn, and is now retained without obligation to refund it either to the firm or to a creditor. These grounds of opposition will be successively considered.

(1) We think the plaintiff has exhausted his remedy at law in such a sense and to such a degree that he may now

resort to equity in the pursuit of equitable remedies. This question is quite distinct from the one whether he has established his debt by a judgment binding on the defendant, or must establish it anew. If that necessity be assumed, there is even then no insuperable barrier to equitable remedies where the case in its other aspects is referable to some acknowledged head of equity jurisdiction. Equity may still act because of the futility or inadequacy of remedies at law upon a showing that those remedies have been pursued to the limit of the possible and that there will be no injustice to the defendant through the failure to pursue them farther (*Trotter* v. *Lisman*, 209 N. Y. 174; *National Tradesmen's Bank* v. *Wetmore*, 124 N. Y. 241; *Patchen* v. *Rofkar*, 12 App. Div. 475, 476; s. c., 52 App. Div. 367; *People ex rel. Cauffman* v. *Van Buren*, 136 N. Y. 252; *Whitney* v. *Davis*, 148 N. Y. 256; *American Surety Co.* v. *Conner*, 251 N. Y. 1, 5; *First Nat. Bank* v. *Eastman*, 144 Cal. 487, 493; *Williams* v. *Adler-Goldman Commission Co.*, 227 Fed. Rep. 374; *Bank of Commerce & Trusts* v. *McArthur*, 256 Fed. Rep. 84; *Quarl* v. *Abbett*, 102 Ind. 233, 242; *Earle* v. *Grove*, 92 Mich. 285, 290; 38 A. L. R. 269, 270, and cases there collated). Such a showing is made upon the record now before us.

The plaintiff cannot stir another step in the pursuit of legal remedies. He has recovered a judgment against Lawrence and is still unable to collect it. He is not in a position to recover a judgment against Grannis or against Grannis and Lawrence jointly, for Grannis is now a resident of Massachusetts without an office or place of business in this State, and has steadily refused to submit himself to the jurisdiction of our courts. The plaintiff's every effort to recover a joint judgment has been thwarted by an adverse ruling. If equity will not act now, it can never come to his relief at all, for there is nothing more that he can do (*Trotter* v. *Lisman; National Tradesmen's Bank* v. *Wetmore; Patchen* v. *Rofkar, supra*).

A different conclusion might be called for if injustice

would ensue to the defendant by recourse to equity at this time without further compliance with preliminary conditions. The chance of such injustice is illusory. The defendant would profit nothing by the recovery and enforcement of a judgment for the misappropriated securities against the other partners jointly. This is evidenced in divers ways. Such a judgment was twice recovered, though modified later upon appeal. In each instance execution was issued against the joint property and returned unsatisfied while the judgment was still in force. The fact is thus established that the defendant's liability as special partner would not be reduced by a dollar if the judgment were standing against the firm just as it is now standing against Lawrence. The evidence thus furnished by the executions is confirmed by other evidence more recent. Grannis, examined under a commission in Massachusetts, testified upon this trial that neither he nor the firm had any assets in this State. There is not even a suggestion to the contrary. In such circumstances equity would be sacrificing the substance to the shadow if the tyranny of a formula, the mirage of an unattainable condition, should lead it to stay its hand.

(2) Assuming that there has been due exhaustion of the remedy at law, we approach the second question, the adequacy of the evidence to establish the misappropriation of the securities and the existence of a debt. We think the plaintiff might have been required, if the defendant had so chosen, to prove the debt anew without reference to the judgment. We think, however, that there has been a waiver of that requirement, a consent by the defendant that the evidence in the first action be accepted without repetition as evidence in this. If that is so, the debt was proved.

We have said that the judgment against Lawrence was not binding upon Langley, and that the cause of action, in default of waiver, must have been established once

again. The *ratio decidendi* of our opinion when the judgment was modified by striking out the name of Grannis goes far to blaze the path for us, irrespective of decisions elsewhere. The implication is a strong one that the judgment as thus modified is binding upon Lawrence individually, and not upon any one else, whether a partner or a stranger (244 N. Y. 182, at p. 194). If we assume in favor of the plaintiff that the question is still open, the result will not be changed. The plaintiff pins his reliance on a group of common-law decisions. Typical and most important are *Inbusch* v. *Farwell* (1 Black, 566); *Brown* v. *Birdsall* (29 Barb. 549), and *Walsh* v. *Kirby* (228 Penn. St. 194, 197). They hold or are said to hold that in the circumstances there set forth a judgment against one partner is effective against the other partners in respect of their joint interests, and collectible in equity out of the equitable assets, if the others are non-residents and beyond the jurisdiction (cf. *Gay* v. *Johnson*, 32 N. H. 167; *Whittemore* v. *Elliott*, 7 Hun, 518; *Powers* v. *Braley*, 41 Mo. App. 556; *Lane* v. *Salter*, 51 N. Y. 1).

We make no attempt to analyze the cases closely or to say how far they can be reconciled with the judgments of this court. If they go as far as the plaintiff says they do and are consistent with our own pronouncements, they do not go far enough to control the case at hand. They are built, one and all, on the assumption that the nonresident partners were not amenable to service. In England the ancient practice was to procure a judgment of outlawry against the partners or co-debtors beyond the jurisdiction (*Hall* v. *Lanning*, 91 U. S. 160, 166; *Blessing* v. *McLinden*, 81 N. J. L. 379). The plaintiff might then proceed against the partners he could serve. It does not follow as of course that any others would be bound. Decisions are not lacking that a return by the sheriff, *non est inventus*, will receive the same effect as a judgment in the ancient form, since the process of outlawry is one unknown to our law (*Nathanson* v. *Spitz*,

19 R. I. 70, 73; *Tappan* v. *Bruen*, 5 Mass. 193). Proof of such a return, or its equivalent, is, however, the minimal requirement. Nowhere in the decisions is there holding or suggestion that in cases uncovered by the statute (Civ. Prac. Act, § 1197) a partner or a joint debtor, if present within the State, though resident elsewhere, will be affected as to his joint interest by a judgment against another (cf. *Oakley* v. *Aspinwall*, 4 N. Y. 513; *Lane* v. *Salter, supra*). This was the situation in respect of the defendant Grannis while the action for conversion, begun in April, 1914, was pending undetermined. He was a resident of Brookline, Mass., or of Greenwich, Conn., but from 1914 till 1917 he had an office in New York for the daily transaction of business in person. Whether his attendance at this office began at the commencement or at the end of 1914, the record is uncertain. In any event there was ample opportunity to serve him, for not till January, 1915, did Lawrence serve an answer in the action for conversion, and not till December, 1921, was the case brought on for trial. It does not even appear that a return, *non est inventus*, or the equivalent, was put in evidence by the plaintiff to supply an excuse for the omission. So far as the record shows, he proceeded against one when he could have served the process upon all, misled by his belief that he was protected by the statute (Civ. Prac. Act, § 1197). We are referred to no authority that would give effect to such a judgment except against the party served. If Grannis had an office in this State for the transaction of business in person where he was in regular attendance, he was not absent from the State within the meaning of our decisions, though resident abroad (*Mack* v. *Mendels*, 249 N. Y. 356). Service is impossible now, as it has been since 1917, when there was an abandonment of the office and a withdrawal from the State. We cannot say that it was impossible while the litigation was still young.

Assuming as we do that the plaintiff might have been

required to prove his cause of action anew against Langley, we have yet to meet the question whether the requirement was waived.

The gist of the defendant's contention on the trial was this, that there was no remedy in equity till the plaintiff had a judgment binding on the firm. Nowhere during the trial was there a suggestion of the point that though equity might act, there was need to prove the debt over again before the defendant could be charged. Not a little of the argument was directed to the pleadings. The complaint states the wrong to the plaintiff, the misappropriation of his securities, and follows this by a statement that for the wrong so committed he has a judgment against the firm. At the date when the complaint was served, the judgment had not yet been amended by striking out the name of Grannis. Counsel for the special partner, far from insisting that the misappropriation of the securities must be independently established, made the point upon the trial that nothing of the kind was necessary, since the cause of action pleaded was framed on the assumption that there had been a recovery of a judgment binding on the partnership. In moving later on, at the close of the plaintiff's case, for a dismissal of the complaint, he launched the same attack. He was not urging the failure to make proof of the misappropriation over again by evidence *dehors* the judgment. What he was urging was the failure to make proof of a judgment corresponding to the judgment pleaded. A like attitude is revealed when, upon the denial of the motion, he advanced to the defense. The fact was then brought out that the judgment had been modified by striking out the name of Grannis with the result that in its altered form it was a judgment against Lawrence only. Upon this being shown, the plaintiff amended his complaint by allegations to the effect that the judgment so modified was the only form of judgment he was able to recover. Even then the defendant did not urge that

the cause of action back of the judgment was to be made out again. He renewed the motion to dismiss upon the grounds previously urged at the end of the plaintiff's case without hint of any others.

The inference of waiver would be inconclusive, however, if it rested upon silence only. Beyond the silence there is evidence of affirmative consent. Plaintiff did not limit his proof to the production of a judgment roll. He put in evidence the whole case, including all the testimony upon which the judgment was recovered. The defendant might have insisted that the court should close its eyes to the testimony thus offered, unless and until it was repeated by the witnesses. Instead, he signified a willingness that it might be considered as it stood. This appears very plainly from a colloquy between counsel. A question had arisen in respect of certain facts to be conceded. Counsel for the defendant offered an admission that the plaintiff on April 10, 1908, had delivered certain bonds to the firm of Coster, Knapp & Co., which the latter firm had transferred to the firm of Grannis & Lawrence, and he requested an admission from counsel for the plaintiff that Grannis & Lawrence had paid $86,000 for the bonds so delivered. Counsel for the plaintiff refused to concede anything except what was shown by the record then in evidence. To this counsel for the defendant retorted in effect that he was not asking for the concession of anything which the record already in evidence would not establish independently. " I do not think," he continued, " that there is any other testimony or evidence as to the transaction itself other than what is contained in these voluminous records that is going to help us at this stage." A moment later he observed: " I am not going to have any further admissions as to the transaction itself, except such as appear in the record," referring to the record of the other trial. " I agree with you," replied counsel for the plaintiff. " I do not care for any."

We think the fair inference from this discussion is that

the evidence in the former action was to be deemed before the court to be considered and acted upon as evidence in this. There would certainly be injustice to the plaintiff if in the face of these concessions, tacit and express, the point were now upheld that proofs, capable of being duplicated, should have been gone over anew. This does not mean, however, that the trial judge was under a duty to draw the same inference from the evidence that had been drawn by the jury. Very likely he would concur, but he was at liberty to dissent. The difficulty is that up to this time he has not found upon the subject either one way or the other. His opinion makes it clear that he did not think himself at liberty to base a finding of conversion upon the record of the other trial. This is shown also by his disposition of requests to find. We said upon the last appeal (244 N. Y. at pp. 176, 177, 181) that a conversion, or what was equivalent to a conversion, by the firm of Coster, Knapp & Co., through the delivery of the securities to the firm of Grannis & Lawrence, had been established as a matter of law by uncontroverted evidence, but that the question whether the securities had been received with guilty knowledge was one of fact for the jury. The trial judge upon this trial refused to find the uncontradicted facts of delivery and sale, very plainly in the belief that the evidence was not before him. We think it was before him just as it had been before the jury.

(3) Assuming in plaintiff's favor that the remedy at law has been shown to be inadequate and that misappropriation with guilty knowledge by the defendant's general partners may be gathered from the record, we are brought to the question whether the defendant must respond in equity to the extent of the capital withdrawn.

The defendant's limited partnership, organized in 1907, was subject to the Partnership Law of 1897 (L. 1897, ch. 420). The present law governing limited partner-

ships (Article 8 of the Partnership Law of 1922; amending Cons. Laws, ch. 39), which is substantially the Uniform Limited Partnership Act prepared by the Commissioners on Uniform State Laws, did not take effect till April, 1922, though an act substantially the same had been adopted a few years earlier (L. 1919, ch. 408). Under the act of 1897, a special partner was conceived to be a true partner, but with limited liability (*Ames* v. *Downing*, 1 Bradf. 321, 326; *Casola* v. *Kugelman*, 33 App. Div. 428, 432, 433). From this the consequence followed along with others that if he failed to comply in substance with the statutory requirements, he was liable to creditors as if the partnership were general (*Van Ingen* v. *Whitman*, 62 N. Y. 513; *Durant* v. *Abendroth*, 69 N. Y. 148; s. c., 97 N. Y. 132; *Manhattan Co.* v. *Laimbeer*, 108 N. Y. 578). Under the uniform act, the conception of his relation to the business has been modified not a little, with the result that liability has been withdrawn in many situations in which it would have been recognized before (see the Commissioners' note to section 1 of the Uniform Limited Partnership Act). Even under the uniform act, however (as will later be explained more fully), a special partner is liable, to the extent of his withdrawn capital, for the payment of a partnership liability where the assets left with the general partners, irrespective of their valuation at the time of dissolution, are thereafter found to be inadequate. *A fortiori* we may expect a like result to follow where the special partner is conceived of as a true partner, though one whose liability is limited.

The defendant concedes that a special partner must respond to the extent of his withdrawn contribution if the partnership is insolvent at the time of the withdrawal. The concession was hardly to be avoided in view of decisions of this court to the effect that the special partner in such circumstances is liable in equity, the remedy against the firm having been followed and exhausted (*Bell* v. *Merrifield*, 109 N. Y. 202; *Baily* v. *Hornthal*, 154

N. Y. 648; cf. *Fuhrmann* v. *von Pustau*, 126 App. Div. 629). The question is still open, however, whether the special partner may be charged at the instance of a creditor where at the time of the withdrawal of his capital contribution, the assets left with the general partners are sufficient at a fair valuation to discharge the outstanding liabilities, but have become inadequate thereafter. We think his obligation to creditors to the extent of his limited liability can be discharged by nothing less than payment (cf. *Fuhrmann* v. *von Pustau, supra; Coffin's Appeal*, 106 Penn. St. 280, 285; *Snyder* v. *Leland*, 127 Mass. 291). The general partners are not relieved of their liability to creditors by distributing the assets among themselves. They remain liable *in solido.* The special partner does not relieve himself of liability by withdrawing his contribution. He remains liable as before, though as before his liability is limited. A case may be supposed where a special partner receives in cash his capital contribution, the general partners retaining property sufficient at a fair valuation to pay the debts in full, but the next day or the next hour the property is destroyed by earthquake, flood or fire. The conclusion is hardly thinkable that the special partner may keep the cash, and leave the creditors with nothing. His contribution, like the capital of a corporation and to a similar extent, is to be treated as a trust fund for the discharge of liabilities (*Hurd* v. *N. Y. & C. Steam Laundry Co.*, 167 N. Y. 89; *Hazard* v. *Wight*, 201 N. Y. 399; *Irvine* v. *N. Y. Edison Co.*, 207 N. Y. 425; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, 385), and this whether the liability has its origin in contract or in tort (*Matter of Peck*, 206 N. Y. 55). He can gain nothing for himself out of the fund so created, except in subordination to the creditors, until the debts have been extinguished. What was left with the general partners in this instance was cash in bank to the extent of $18,011.81, and a stock exchange seat, of the value of $71,000, available for creditors, if at all,

through the aid of equitable remedies. Nothing was left that was subject to execution at law. There was not even a promise by the general partners to hold these equitable assets intact while the plaintiff's contested claim was in course of liquidation. Without dissent from the defendant, they divided what had been left and used it for themselves. By the time that the plaintiff was armed with an execution, the assets had been wasted or their value had evaporated. The special partner insists that the risk of change was on the creditors. We think it was on him.

There is reinforcement for this conclusion in the provisions of the statute. Even in relation to the partners *inter se*, a special partner may not receive any part of his capital contribution until " all liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them " (Uniform Limited Partnership Act, § 16, subd. 1-a; New York Partnership Law, § 105, subd. 1-a). This, standing by itself, might seem to justify the contention that the payment might be kept if what was left was then adequate, though inadequate thereafter. The inference is seen to be erroneous when we read the section following. By the next section it is provided that " when a contributor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return " (Uniform Limited Partnership Act, § 17, subd. 4; New York Partnership Law, § 106, subd. 4). The equity thereby established in favor of the partnership is one to which creditors succeed (*Saunders* v. *Reilly*, 105 N. Y. 12, 19; *Bulger* v. *Rosa*, 119 N. Y. 459; *Case* v. *Beauregard*, 99 U. S. 119, 127). Supplementing that section, and pointing to a like con-

clusion, is another and later section, which regulates the distribution of assets in the event of dissolution. Provision is there made (Uniform Limited Partnership Act, § 23; New York Partnership Law, § 112) that the claims of creditors shall have priority over those of special partners for capital contributions, though the claims of special partners are to have priority over those of their associates. We are not unmindful of the fact that these provisions of the statute do not govern this partnership, which was organized and dissolved before the statute was enacted. We think that in their general tenor they are declaratory of existing law.

The defendant makes the point that if he is liable for anything, the limit of liability is the capital withdrawn, and that interest must be excluded. We see no adequate reason for upholding the exclusion. Undoubtedly, the liability is to be limited to the capital contribution as long as the contribution is left at the risk of the business. When, however, it is withdrawn from the business, with the result that it has become available for the use of the partner individually, the interest which has been earned, presumably, through the employment of the capital, must be included as part of the sum to be refunded. The statute in its present form is explicit to that effect (Uniform Limited Partnership Act, § 17, subd. 4; New York Partnership Law, § 106, subd. 4). The general principles of equity enforce a like conclusion (*Stoughton* v. *Lynch*, 1 Johns. Ch. 467; *Bell* v. *Merrifield, supra; Woerz* v. *Schumacher*, 161 N. Y. 530, 538).

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted with costs to abide the event.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.