HENRY SANDERSON, Respondent, v. JAY COOKE et al., Appellants.

74

(Argued February 17, 1931; decided March 24, 1931.)

*Harold H. Corbin, Carl M. Owen, Edward J. Bennett* and *Spencer Pinkham* for appellants. The proof failed to show any present title in the plaintiff to the books of his three special partnerships; but, on the contrary, showed that he never had any title thereto. (*Skolny* v. *Richter*, 139 App. Div. 534; *Madison County Bank* v. *Gould*, 5 Hill, 309; *Buck* v. *Alley*, 145 N. Y. 488; *Harris* v. *Murray*, 28 N. Y. 574; *Artisans' Bank* v. *Treadwell*, 34 Barb. 553.) The proof failed to show any present title in the plaintiff to the books of his three general partner-

ships; but, on the contrary, showed that he parted with and lost all title. (*Corticelli Silk Co.* v. *Balfour*, 5 Terr. L. R. 385; *Matter of Brown*, 242 N. Y. 1.) The proof showed that the plaintiff lost any title he may have had by virtue of a tacit understanding with his partners that title to the books and records of each firm should vest in the next succeeding firm. (*Menendez* v. *Holt*, 128 U. S. 514; *Pfleghar Hardware Specialty Co.* v. *Blair*, 30 Fed. Rep. [2d] 614.) Plain principles of equity bar plaintiff from all relief. His failure and refusal to show reason ·for his request, or substantial·injury from its denial are fatal — for equity will not interpose to vindicate one in the mere assertion of a technical legal right. (*Packard Motor Car Co.* v. *Milwaukee Elec. Ry.*, 190 N. W. Rep. 914; *Advance Oil Co.* v. *Hunt*, 116 N. E. Rep. 340; *Bouchard* v. *Zetley*, 220 N. W. Rep. 209; *Genet* v. *D. & H. R. R. Co.*, 122 N. Y. 529; *Van Buren* v. *Posterano*, 132 Am. St. Rep. 199; *Gray* v. *N. R. Co.*, 128 N. Y. 499; *Corning* v. *Troy Nail Factory*, 40 N. Y. 191; *Cabell* v. *Roberts*, 6 Rand, 580; *Woodbury* v. *Portland Mar. Soc.*, 90 Me. 17; *Foster* v. *Mansfield*, 146 U. S. 88; *Purdy* v. *Manhattan Elec. Ry. Co.*, 13 N. Y. Supp. 295; *Collins* v. *Martin*, 248 S. W. Rep. 941.)

*Samuel Seabury* and *Henry A. Uterhart* for respondent. A partner has the right at all times to inspect and copy partnership books; if his copartners prevent him from exercising his right they commit a wrong which the aggrieved partner may redress in an action brought to enforce his right. He is not obliged to allege or prove that some other right has been invaded and to ask for inspection and copy as an incident to the establishment of such other right. (*Matter of Trueman*, 1 D. & C. 464; *Davis* v. *Davis*, 10 N. Y. Supp. 897.) The Partnership Law provides that general, as well as special, partners shall at all times have the right to inspect and copy partnership books. Books, like any other property of

the firm, remain partnership property until disposed of, even though there be a dissolution; consequently, as long as the books remain partnership property, the right to inspect and copy continues, even though the firm be dissolved. (*Kittredge* v. *Langley*, 252 N. Y. 405; *Matter of Truman*, 1 D. & C. 464; *Bearns* v. *Burras*, 86 Hun, 258; *Howlett* v. *Hall*, 55 App. Div. 614; *Davis* v. *Davis*, 10 N. Y. Supp. 897.) Plaintiff has not assigned, transferred, abandoned or surrendered any of his partnership rights in his firms' books. (*Cruttwell* v. *Lye*, 17 Ves. Jr. 334; *Matter of Brown*, 242 N. Y. 1; *White* v. *Eiseman*, 134 N. Y. 101.)

CRANE, J. Charles D. Barney & Co. is an old-established brokerage house with which the plaintiff became connected in 1911. By articles of partnership, dated February 1, 1911, he, with six others, became general partners of the firm, with one special partner. The partnership was continued by another agreement dated November 29, 1912. Again, on the 1st day of February, 1915, articles of general partnership were signed, under which the firm continued until December 31, 1918, at which time, either by agreement dated that day, or January 1, 1919, the firm was dissolved and a new firm formed, in which the plaintiff and J. Horace Harding became special partners. This special partnership was continued by agreements dated December 23, 1919, and June 29, 1920, and terminated by agreement in writing dated the 14th day of January, 1921.

As a special partner, Mr. Sanderson's rights were limited to a return of his capital contribution, and a fixed percentage thereon. These he received upon retirement. His interests as general partner, prior to 1918, were disposed of by the agreements referred to, and by settlement. He at no time has claimed, and does not now claim, that any of the partnerships owe him one dollar, or that the settlements were unfair or fraudulent. He never

has made and does not now make any claim of any kind or nature upon any of his former associates or the partnership of Barney & Co. Neither is there any intimation of existing creditors who might pursue a retired limited partner within the doctrine of *Kittredge* v. *Langley* (252 N. Y. 405, 418).

This litigation arises out of a supposed property right which the plaintiff claims to have in the old books of account. The various partnerships, beginning with 1911, and continuing down to the 28th day of February, 1921, were a continuation of the business of Charles D. Barney & Co. without interruption. The place of business was the same for each succeeding firm, with possibly one change — in the location of the offices. All office equipment, desks, chairs, tables, files, records and books remained with the new or incoming firm or partnership. As one man dropped out and another came into the firm, the only apparent difference was in the personnel and interests of the partners, and not in the business itself. The books, which included cash books, blotters, purchase and sales books, ledgers, stock records, journals, and bond ledgers, were passed on from firm to firm and used in continuity; that is, the new or succeeding firm did not open new or fresh books actually, but continued to write and make entries in the old books until all the pages were used up. One book, therefore, might contain the business of more than one of these firms. The fact is beyond dispute — because Mr. Sanderson himself says so — that the business could not be carried on without the information contained in all these records. The books of the previous firm were necessary to carry on the business as a going concern. " Their books and records are necessary to the business to continue it as a going business."

In 1926, Mr. Sanderson asked to see and examine the books of the old firms, which were then in the possession of Charles D. Barney & Co., and was afforded the opportunity, not only of inspecting the books personally, but

of having them examined by public accountants, Barrow, Wade, Guthrie & Co. From November 22, 1926, to December 23, 1926, two men were on the books, assisted by William J. Woods, of Barney & Co., who took himself out of his own work to assist the accountants. Private or family accounts were kept by the senior member of the firm, J. Horace Harding. The defendants were willing to have the plaintiff inspect these personally, but refused to permit him to make and take copies of them.

The plaintiff thereupon, on the 15th day of November, 1928, or eight years after his final termination of all relationships with Charles D. Barney & Co., commenced this action, basing it solely upon the claim that the books belonged to him, were his property the same as a desk or a chair could be property; that he was entitled as a matter of right to see, inspect and copy all or any part of the books in question, including the Harding personal account. He has been sustained by the judgments in the courts below, holding that the books, records and papers of the various firms are the property of the plaintiff, with the other members of the then firms, and the defendants are enjoined from removing or disposing of any of them. The plaintiff is given the right personally or by his duly authorized agents to copy, photograph or photostat any and all of these books, records and papers. Has the plaintiff any such right, as matter of law, on the conceded facts of this case?

The general rule regarding business partnerships is that books should be kept, open to the inspection of any partner at all reasonable times, even after dissolution, subject, however, to special agreement. (Lindley on Partnership [Amer. ed., Ewell], vol. 2, pp. 404, 420; Rowley on Partnership, vol. 2, § 913; Partnership Law; Cons. Laws, ch. 39, §§ 41, 99.) Even under these broad statements of the law, a partner's rights are not absolute. He may be restrained from using the information gathered from inspection for other than partnership purposes.

(*Trego* v. *Hunt*, L. R. [1896] A. C. 7.) The employment of an agent to make the inspection does not authorize the selection of anybody he may choose for the purpose. The agent employed must be a person to whom no reasonable objection can be taken, and the purpose for which he seeks to use the right of inspection must be one consistent with the main purposes and the well being of the whole partnership. (*Bevan* v. *Webb*, L. R. [1901] 2 Ch. 59.) The right of inspection by an agent is not so absolute as the right to a personal inspection, and may be refused if the court is satisfied that the assistance of an agent is not reasonably required, or that the inspection is wanted for an improper purpose. An agent may be required to give an undertaking that the information acquired will not be improperly used. (Lindley on Partnership [9th ed.], p. 492.) *Howlett* v. *Hall* (55 App. Div. 614) recognizes that the right is not a strict property right the same as part ownership in other personal property, but is confined within limitations. Motive plays a part, which of course attaches to the ownership of no other kind of property, for in this case it was stated that the application to examine the books may be refused, if it be made in bad faith. And in *Bearns* v. *Burras* (86 Hun, 258) it was said: " The courts have sufficient serious business to engross their time, and cannot permit a party, simply for the purpose of gratifying his fancy, to call upon its power to get in some way more pleasing to him that which is freely offered to him." This was said, although the court also stated that a partner has the right notwithstanding dissolution, to examine the books of the concern at a reasonable time and place, because they are as much his property as that of his copartner. *Kelly* v. *Eckford* (5 Paige Ch. 548) and *Stebbins* v. *Harmon* (17 Hun, 445) were actions for accounting.

We are not treating here, however, with a partnership in existence, a going concern, nor with an action for a partnership accounting and the inspection incident

thereto, nor with joint partnership property left on dissolution, for safe-keeping, in the custody of the other partner or partners. We have much more than this. Whatever may be the property right of a partner in the partnership books, he may transfer and dispose of it like his right to any other bit of property by express, or necessarily implied, agreement. This is succinctly and forcibly stated in a short opinion by Mr. Justice ALBERT CARDOZO, in *Platt* v. *Platt* (61 Barb. 52, p. 53). Writing of a former partner, whose executors claimed a right to inspect partnership books, the justice said: " Nathan C. Platt had parted with his interest in the partnership, and conveyed it to the defendant. While that sale stands, the plaintiffs have no rights in the property. While that sale stands, the books belong to no one but the defendant; and while they belong exclusively to him, no one else has the right to a general inspection of them."

The plaintiff is mistaken, I think, in the extent of the burden and duty cast upon partners regarding the books on dissolution. Where there is no other agreement, express or implied, the books belong to both of the partners; one has as much right to them as the other. There is no law which compels one partner on dissolution to continue the business for the sake of keeping the books and preserving them for the inspection of the other partner. They may be put in storage; sometimes they are quite numerous, and the rental of storage space is no small charge. Is one partner to bear all the expense for the benefit of the other? The expense of preserving the books must be a joint charge and a joint burden. When, therefore, section 41 of the Partnership Law states that the partnership books shall be kept at the principal place of business of the partnership, and every partner shall at all times have access to, and may inspect and copy any of them, it necessarily refers to a going partnership, as there is no duty to maintain the place of business after dissolution. Likewise, there is no duty on a purchaser

of the good will and business of a firm to keep the books of the prior concern. The new partnerships of Barney & Co. were not bound to store the books of the plaintiff's firm for his benefit. That the plaintiff never made inquiry about the old books, apparently assuming that they would be kept by new and succeeding firms, without charge to him, indicates that he realized that these successors had an interest in preserving them. That interest is to be found in his own assertion, that these books of the Charles D. Barney & Co., under any and all the firms, were necessary and requisite for the carrying on of the business. Possession and use passed on without interruption. This he understood, when he formed the limited partnership in 1918, from which he was to draw his interest on his capital investment, as well as in 1921, when he withdrew from the firm.

The trial judge has found that there was nothing in any of the partnership agreements with the plaintiff which refers to the books, records and correspondence. Neither was there any reference to office furniture and fixtures in all of the agreements. The plaintiff has never made any claim to be a part owner or have a property interest in these. He says at one point that the furniture, and the making over of the offices were very expensive. What became of his property interest in these assets? They passed, as he intended that they should pass, to the firms continuing the business, and which of necessity were obliged to have the office equipment to carry on the business. The books and the records and the files were much more necessary for the continuance of that business. We find expressions running through all these various partnership agreements clearly indicating that it was the intention that every succeeding firm continuing the business of Charles D. Barney & Co. should take as its property the books, records, files, office chattels, used by the preceding firm.

The first partnership agreement, dated February 1,

1911, contains this: " The firm created hereby takes over all the residue of the assets and property of the late firm of Chas. D. Barney & Co. as they existed upon the 31st day of January, 1911, and assumes all the debts and liabilities of said firm as they existed on said date." The good will and the right to use the firm name upon dissolution vests in J. Horace Harding.

The agreement of November 29, 1912, has nothing to say upon this point, apparently continuing the former agreement, with change of interests.

That of February 1, 1915, says: " The firm created hereby takes over all the residue of the assets and property of the late firm of Chas. D. Barney & Co. as they existed upon the thirty-first day of January, Nineteen hundred and fifteen, and assumes all the debts and liabilities of said firm as they existed on said date." The good will and the right to use the firm name is to pass to J. Horace Harding on the dissolution of the partnership. This agreement was to terminate on the 31st day of January, 1917. It continued in effect until the 31st day of December, 1918, without any apparent written extension. On December 31, 1918, or January 1, 1919 (plaintiff's Exhibits 4, 5 and 15), the partnership was again reorganized by making Harding and Sanderson special partners. The old firm was dissolved on the 31st day of December, 1918, and the good will and the right to use the firm name were assigned and transferred to Henry E. Butler, for the use of the new firm of Charles D. Barney & Co. These words are found in the agreement: "All customers accounts of the firm of CHAS. D. BARNEY & COMPANY shall be taken over by the Limited Partnership of CHAS. D. BARNEY & COMPANY except as hereinafter otherwise provided. * * * " In the articles of limited partnership dated the next day, January 1, 1919, we find the words: " The firm created hereby takes over all the residue accounts of the late firm of Chas. D. Barney & Co. as they existed upon the thirty-first day of December, 1918,

and assumes all the debts and liabilities of said firm as they existed on said date." Thus was created the partnership in which Sanderson became the limited partner. He knew that the business could not be carried on without all the books, accounts, papers and files of the previous general partnership. He knew, also, that the books of the old firm were not physically closed and laid aside for preservation, but were continued in use by the new limited partnership for their entries and accounts; in other words, as heretofore stated, one book might have the entries of the former general partnership and also the entries of the new limited partnership, all under the name of Charles D. Barney & Co. To whom did such a book belong? To the old firm and also to the new? Was the new firm keeping its accounts and business transactions in books which did not belong to it? Could the old firm at any time take its books away, put them in a storehouse? To ask these questions is to show the weakness of the claim that title to these books and the property in these books remained in Sanderson after the termination of his general partnership. When he became a special partner, he ceased to have any interest in the assets, and among the assets of the new limited partnership were the books, records, etc., demanded in this case.

We must not overlook the obligations which this new firm assumed. They agreed to pay all the debts and liabilities of the old general partnership as they existed on the 31st day of December, 1918. We cannot imagine the assumption of such an obligation without the right to the records forming the lasting and legal evidence of the transactions. The debts assumed were those stated in the accounts recorded in the books. To enter the credits from time to time, the books would be constantly in use, and all this the plaintiff knew, and states that he knew.

These agreements, their method of doing business, the

relationship of the parties, the assets transferred and the obligations assumed, all center around the heart of the business, which was in the books; without these, no life, no circulation. To transfer the accounts which constituted the business, without the records of the accounts, appears to be meaningless. They were one and the same thing for the purpose of this transaction. We must, therefore, conclude that of necessity the books of the old general partnerships passed to the new special partnership of Charles D. Barney & Co. on the first day of January, 1919.

In the special partnership agreement of December 31, 1918, certain accounts were excepted — did not pass to the limited partnership — they remained the property of the partners of the old general partnership. Schedule A, annexed to the agreement, listed these accounts. It is not in the record, or now annexed to that agreement. The general partners, in passing over all the property in the accounts, and necessarily the books, to the limited partnership, excepted these accounts in Schedule A. They were, however, transferred to and carried on the books of the new partnership. As Sanderson says, " They were carried into the new firm." Of course, they were not carried on the books of the new firm or into the new firm, as property of that new partnership; they appeared there like any other customer's accounts, that is, property belonging to the individuals composing the old firm, who, in this instance, must have been recorded as creditors, or customers, not as partners. Apparently these reserved accounts have been closed, as no reference is made to them, nor hint given that they have not been paid.

Much reliance has been placed upon the case of *Ex parte Joseph Trueman — In the Matter of Richard Martindale* (1 Deacon & Chitty's Reports, 464 [Bankruptcy], 1832). The case was based upon two things: *first,* the agreement between the partners as to the disposition of

the books after dissolution; *second*, on an act of Parliament (6 Geo. IV, ch. 16, § 33) vesting power in commissioners to examine books relating to dealings with a bankrupt. In the year 1811 the petitioner entered into partnership with the bankrupt and by their articles of partnership it was stipulated that the account books should remain the joint property of the partnership at its dissolution. The partnership was dissolved and all accounts wound up in 1820. In May, 1830, one of the partners, named Martindale, was declared a bankrupt, and his assignees claimed the right to inspect the books of the partnership. They summoned the other partner, the petitioner, to produce the books before the commissioner. Trueman, the other partner, petitioned to restrain the examination. ERSKINE, C. J., said that by agreement the books were to remain upon dissolution the joint property; that Trueman had kept the books in his custody with the approval and consent of Martindale; that there had never been any change in ownership. He also stated that the act of Parliament authorized the production of the books; and that the question as to the right or necessity of inspection of them after being produced could be determined later. Evidently the latter point influenced the other two judges.

Although the agreement in this *Trueman* case was no extension of the common-law right of partners on dissolution, and is still the law in the absence of any other arrangement (*Zimmerman* v. *Harding*, 227 U. S. 489, p. 494), we have the facts, as above stated, which show that the retiring partner, Sanderson, expressly and by implication made other arrangements.

We, therefore, conclude that the plaintiff in the formation of the limited partnership January 1, 1919, transferred his property interest in the books to the new firm, in which he became a limited partner, and that he is not entitled absolutely, as matter of right, to an examination of them. His property interest in them has ceased.

This, however, does not mean that he may not at any time have an examination of the books for any sufficient reason recognized by law. Equity is very liberal in permitting a partner to examine the partnership books, even when the property in them has passed into other hands. Any plausible or sufficient reason for the protection and enforcement of rights or for the preservation of evidence will move the court. Equity will not, however, in the absence of such property right, direct the extensive examination here demanded in the absence of any reason or necessity therefor, or without any excuse other than the mere desire of the plaintiff to exercise a naked right.

For the reasons here stated, the judgment of the Appellate Division and that of the Special Term should be reversed, and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., LEHMAN, KELLOGG and O'BRIEN, JJ., concur; POUND and HUBBS, JJ., not sitting.

Judgments reversed, etc.